### Smith *vs.* Hornsby *et al.*

1. A defendant in a bill in equity has the right to withdraw his demurrer thereto before the court has pronounced and entered his final judgment thereon. An intimation or declaration that he would overrule the demurrer, would not debar the right of withdrawal. This right is included in the privilege of amending pleadings at any stage of the cause, in matters of form or substance, which is conferred by law.

2. Where, in an equity case, both a plea and answer are filed, it is the duty of the court to dispose of the plea before proceeding with the trial on the answer.

3. There has been a former suit embracing the same subject-matter as the present bill, and between the same parties. (The complainant and principal defendant were identical. Other defendants in the present case are privies of those in the former.) To the first bill a demurrer was filed, on the ground, among others, that there was no equity therein. The demurrer was sustained, and a judgment taken dismissing the bill, on the ground "that under the allegations of fact therein contained, the complainant was not entitled to the relief prayed for, or any other relief." This decree was brought to the Supreme Court, and there affirmed:

*Held,* that the former decree was a bar to the second bill, and a plea to that effect was properly sustained. That facts properly pleaded in the second suit were defectively stated in the former bill, furnishes no ground for relief, it not appearing that the complainant was ignorant of these facts when the case was formerly before the court, or that he was prevented from availing himself of them by accident or mistake, or by the fraud or act of the adverse party. A court of equity will not grant relief from a judgment that could have been prevented but for the negligence of the party seeking it.

April 3, 1883.

Amendment. Practice in Superior Court. Equity. *Res Adjudicata.* Judgments. Before Judge HARRIS. Campbell Superior Court. August Term, 1882.

Smith filed his bill against Joseph Hornsby, William Stubbs and Arnold Stubbs, alleging, in brief, as follows:

In 1859, William H. Smith, the brother of complainant, purchased from Hornsby 441½ acres of land in Fayette county for $3,000, $1,500 of which was paid in cash, and a note given for the balance. Wm. H. Smith received a bond for titles. Shortly afterwards, complainant purchased the land from his brother, with the assent of Hornsby, paying to his brother the $1,500 which the latter had already paid on the purchase money, taking an assignment of the bond, and giving to Hornsby his note, with his brother as security, for the balance, with interest. Complainant then went into possession, and made valuable improvements upon the land. He remained in possession until August, 1867, when he was adjudged a voluntary bankrupt. In 1866, Hornsby sued on the note of complainant and recovered judgment, and in October, 1867, he received $792.50, which had been raised by levy and sale of some of complainant's property. About the year 1868, Hornsby assigned the judgment to Wm. H. Smith. Shortly after complainant went into bankruptcy, Hornsby wrongfully and fraudulently took possession of the land in dispute, and William and Arnold Stubbs have now been in possession about three years, either as tenants of Hornsby or by some pretended claim under him. Owing to the disability resulting from complainant's bankruptcy, he was unable to bring suit until after September 13, 1877, when, upon his application and by consent of all his creditors who had proved their claims in bankruptcy, he was allowed, by an order of the district court, to withdraw from bankruptcy and dismiss the proceedings. The property is now worth $4,000, and its value for rent is $300 per annum, which has been enjoyed by the defendants from

1868, until the present time. The improvements placed upon the land by complainant greatly enhanced both its intrinsic and rental value. Complainant has tendered to Hornsby whatever may be due him, if anything, on the property, and is still ready to pay the same.

The prayer was for an injunction to prevent any sale or transfer of the property; for an accounting as to rents and profits; for specific performance, and that Hornsby be required to make a deed to him; for general relief and subpœna.

By amendment, complainant alleged that on November 27, 1877, he tendered to Hornsby $1,050, the full amount of the purchase money unpaid, and demanded a deed, which was refused. By a subsequent amendment complainant alleged that a previous bill had been filed by his attorneys, Messrs. Alford & McDaniel, on January 9, 1875, wherein it was alleged by mistake that Weems, his assignee in bankruptcy, had conveyed, by written agreement, to Hornsby all the interest, right and title which complainant had in and to the said land. This allegation was a mistake of fact, and he is advised and believes that what he then supposed was a conveyance of his right, title and interest was in truth and fact not so. No order was ever granted to the assignee to make any such conveyance. He supposed at the time that such an order had been granted, and never learned the contrary until after the former bill had been disposed of. He, therefore, prays to be relieved from any prejudice on account of such allegation.

Defendant demurred to and answered the bill, and pleaded former recovery. The plea alone is material. The former suit, relied on in this plea, was a bill by the same complainant against Hornsby, W. J. Smith, James M. Gorman and his wife Ophelia. This bill alleged the sale by Hornsby to W. H. Smith, the transfer to complainant, the recovery on the note for balance of the purchase money, the adjudication in bankruptcy, the transfer of the *fi. fa.*,

the collection of a part of it by Hornsby, similarly to the present bill. That bill alleged also that Hornsby, confederating with his step-daughter, Mrs. Gorman, had made a deed to the property to her, she taking with full notice; that she and her husband were about to make some transfer or conveyance of the land; that on December, 2, 1867, Hornsby confederated with Weems, the assignee in bankruptcy of complainant, and without any consideration, except what may have unlawfully passed between them as a bribe, Weems conveyed all of complainant's interest, right and title to the land to Hornsby; that W. H. Smith had transferred the *fi. fa.* for the balance of the purchase money to W. J. Smith, who took with full notice of complainant's rights, and was taking steps to sell the land.

Complainant tendered the balance of the purchase money which might be due, and prayed an injunction to restrain the sale of the land; that the deed from Hornsby to his step-daughter be cancelled; that the transfer of the bond by Weems, assignee, be set aside; that he have an accounting for rents, etc., and a money judgment against Hornsby. Attached to this bill as an exhibit was an affidavit by complainant, made before the register in bankruptcy, November 27, 1867, and upon this was written a transfer of "the above indenture," "in lieu of a bond held by R. P. Smith." (It appears from the answers in the present case that William Stubbs and Arnold Stubbs hold under Gorman and wife.)

To this bill defendants demurred on various grounds. The court sustained the demurrer, and entered the following judgment: "After argument had upon the demurrer in this case, it is ordered by the court that the demurrer be sustained on the ground that the complainant is not entitled to the relief prayed for, or any other relief, under the allegations of facts in the bill."

This judgment was carried to the Supreme Court and there affirmed (58 *Ga.*, 529); and upon it rests the plea of *res adjudicata.*

v 70-36

D. N. MARTIN; H. M. REID, for plaintiff in error.

GEORGE N. LESTER; T. W. LATHAM, for defendants.

HALL, Justice.

1. The defendants in this bill had a right to withdraw their demurrer before the court had pronounced and entered his final decree thereon; an intimation or declaration of the judge that he would overrule the demurrer would not debar the right of withdrawal. Code, §3447 and citations. To deny this right would deprive the party of the privilege of amending his pleadings, which he might do as matter of right at any stage of the cause and in all respects, either in matter of form or of substance. Code, §§3479, 4177.

2. It was the duty of the court to dispose of the plea before proceeding with the trial on the answer. Code, §4191.

3. There had been a former suit in this case, embracing the same subject-matter as the present bill, and between the same parties. To this suit a demurrer was filed upon the ground, among others, that there was no equity in the bill entitling complainant to the relief prayed, which demurrer was sustained by the court and a final decree thereon taken, dismissing the bill upon the ground "that, under the allegation of facts therein contained, the complainant was not entitled to the relief prayed, or any other relief." This decree was brought by writ of error to this court, and the judgment of the court below was in all respects affirmed. 58 *Ga.*, 529.

To the present suit this judgment upon demurrer was pleaded in bar of recovery, and the plea was sustained by the court; to reverse which decision the present writ of error is prosecuted.

Every point raised by the plaintiff in error is fully disposed of by the decision above cited, except the single

point, that the bill now in hand properly pleads facts which were defectively stated in former bills.   There is no allegation, however, that the complainant was ignorant of these facts when the case was formerly before the court, or that he was prevented from availing himself of them by accident or mistake, or the fraud or act of the adverse party, unmixed with negligence on his part.   Code, §§3129, 3595.   It is, on the contrary, quite apparent, from the record, that he was well apprised of all the facts now relied on to avoid the force of this decree, before the filing of the bill on which it was rendered, and that he was not prevented by accident, mistake, fraud, or the act of his adversaries, from insisting upon them.   The point here raised has been frequently passed upon by this court, and it has been held invariably that there is no relief from a judgment, even in a court of equity, that could have been prevented but for the negligence of the party.   22 *Ga.*, 60 ; 23 *Ib.*, 366 ; 32 *Ib.*, 362 ; 42 *Ib.*, 412.   In a recent case involving personal liberty (62 *Ga.*, 598), this court held, that the matter would be deemed *res adjudicata* as to all points which were necessarily involved in the general question of the legality or illegality of the arrest and detention, whether all of them were accurately presented or not; that it was sufficient if they might and ought to have been presented in the exercise of due diligence.   Bleckley, J., delivering the opinion in this case, said (page 604), " The effect of a judgment cannot be avoided by a difference in the pleadings, when those in the first case could and should have been as full as those in the second, though in fact they were not.   No party, plaintiff or defendant, is permitted to stand his case before the court on some of its legs, and if it falls, set it up again on the rest, in a subsequent proceeding, and thus evade the bar of a former judgment.   It is the body of a case, and not certain of its limbs only, that the final judgment takes hold upon.   Whoever bring the legality of an imprisonment into question by writ of *habeas corpus*, should, in the first instance, show

as much cause for his attack as he can.   He must discharge all his weapons, and not reserve a part of them for use in a future rencounter.   He must realize that one defeat will not only terminate the campaign, but end the war."   See also 63 *Ga.*, 491, 494, 627.

Judgment affirmed.