HALL'S SELF–FEEDING COTTON GIN COMPANY *vs.* BLACK, assignee, *et al.*

1. A company engaged in the manufacture of gins appointed certain agents to sell gins on commission. The contract between the company and the agents provided that all sales should "be for cash or notes, with lawfu' interest from December 1, until paid; drafts made payable to the order of, and guaranteed by, the party of the second part (the agents); all cash, drafts or securities so received for such sale to be as special trusts for account of said cotton gin company, and remitted with such other securities as may be taken, to said company." The agents rendered an account, showing the amount of their sales to date, and after deducting commissions

Hall's Self-Feeding Cotton Gin Company *vs.* Black, assignee, *et al.*

claimed by them, remitted a portion of the balance by check, and sent their two notes for the remainder ; the company acknowledged the receipt of this letter and its enclosures, and stated that " we place same at your credit with thanks." Before the second note fell due, the agents made an assignment, and among their assets were included certain notes and accounts for gins :

*Held*, that the transaction between the agents and their principal was not a new contract, but merely a remittance in the ordinary course of business on the one part, and an acknowledgment thereof on the other ; and the taking of the notes was not payment until they were themselves paid.

2. Whether a receipt of a promissory note amounts to the payment of a pre-existing debt depends upon the intention of the parties. If such intention can be gathered with certainty from the papers themselves, resort need not be had to the attending circumstances. If the papers are ambiguous, parol evidence is admissible to establish intent.

3. A receipt is only *prima facie* evidence of payment, and may be explained or denied by parol.

November 27, 1883.

Corporations. Payment. Promissory Notes. Evidence. Principal and Agent. Before Judge RONEY. Richmond Superior Court. October Adjourned Term, 1882.

Reported in the decision.

J. S. & W. T. DAVIDSON, for plaintiff in error.

J. C. C. BLACK ; BARNES & CUMMING, for defendants.

HALL, Justice.

On March 18, 1881, the gin company, in writing under seal, signed by both parties, appointed Warren, Wallace & Co., composed of Warren, Wallace and Cranston, agents at Augusta, to sell its gins upon commission. The agents were to receive 25 per cent on all sales and an extra 10 per cent on all cash actually paid by December 1st.

The contract, among others, contained these provisions :

All sales by Warren, Wallace & Co. were to

" Be for cash, or notes with lawful interest from December 1st until

paid. Drafts made payable to the order of, and guaranteed by the said party of the second part. All cash, drafts or securities, so received for such sales, to be a special trust for account of said cotton gin company, and remitted with such other securities as may be taken to said company.

"The said cotton gin company is not to be charged with, or held liable for any charges, such as storage, drayage, freight, marine insurance, fire insurance, advertising, exhibiting or canvassing, for the sale of said goods."

Under this contract, the firm received May 26, 1881, a consignment of $2,842.51. On June 10th, 1881, Warren, Wallace & Co. dissolved by the withdrawal of Warren, and the other two members, using the name of Wallace & Cranston, continued the business, taking the assets and assuming the liabilities of the old firm.

No new contract was made with the gin company, or account furnished it of gins sold up to June 10, 1881, but the new firm, Wallace & Cranston, received up to October, 1881, consignments under the contract, amounting to $3,372.60, which with gins left over from 1880, left in their hands about $7,238.86 of the gin company's property.

On November 30, 1881, Wallace & Cranston rendered an account, showing sales to amount of $5,620.00. From this they deducted 25 per cent—$1,412.50, and then 10 per cent off of the balance, equal to $423.75, which left net due the company, $3,844.18.

In sending said statement, Wallace & Cranston wrote as follows:

"We hand you herewith statement in full of gin account to date, showing balance due you of $3,844.18, for which you will find our check on the American Exchange National Bank, New York, for $1,844.18 and our two notes for $1,000 each, at 30 and 60 days.

"Money is exceedingly close here at this time, and so we make payment in this way, which we trust will be of no inconvenience to you."

The gin company, on December 5, 1881, by letter wrote:

"Your favor 30 ult. to hand, with inclosure, check American Exchange National Bank, New York, for $1,844.18 and notes 30 and 60 days $2,000. We place same at your credit, with thanks.

"Our Mr. Oscar Washburne, secretary, and Isaac Washburne, pres-

ident and treasurer, are now at the Exposition, Atlanta, and proba-
bly some of your firm will meet them."

"Very truly,

HALL's S. F. COTTON GIN Co.

Per S. C. Washburne."

The 30 day note was paid, but before the 60 day note became due, Wallace & Cranston, January 4, 1882, by deed in the ordinary form, assigned to said J. C. C. Black.

The nominal assets were $153,763.85. Preferences $62,505.20. Unpreferred $47,698.85. The gin company was an unpreferred creditor.

The property of the gin company unsold, the assignee turned over to it.

Among the assets attempted to be assigned by Wallace & Cranston, were about $1,000 in planters' notes and open accounts, the same being due for gins sold, and which went to make up the account rendered November 30, 1881.

Some of the notes were payable to the order of the gin company, and were in the form of conditional sales, reserving title to the gins until paid. These notes had never been out of agents' possession, and hence were not indorsed by the gin company.

The gin company failing to get the assignee to surrender anything but the unsold gins, filed on September 11, 1882, its bill returnable to October term 1882, waiving discovery against the firms aforesaid and Black, as assignee, charging the facts aforesaid, and that Wallace & Cranston, unknown to it, were insolvent on November 30, 1881, and that they had no such title to the notes and accounts, a list of which was attached to the bill, as would enable them to assign them to an assignee for the benefit of creditors, against its claim as the real owner.

That the two notes of $1,000 sent November 30, 1881, were not received as payment, but only as collateral and as a memorandum of the indebtedness of Wallace & Cranston, and that they were simply placed to their "credit," and not received as in discharge of the contract of March 18, 1881.

That Wallace & Cranston were the company's agents, and had deducted 10 per cent more from the sales than they were entitled to, as the extra 10 per cent only applied to actual cash paid by December 1, and that the agents could not in this way hold on to the property of their principals, and thus make money at their expense.

The only prayer of the bill insisted on was that the evidences of debt be decreed to belong to complainants, and that the assignee and other defendants, be required to deliver up those uncollected, and pay over the proceeds of those collected.

No personal judgment was asked against any one. All of the defendants acknowledged service.

The assignee alone answered the bill. He denied the insolvency of Wallace & Cranston on November 30, 1881, admitted the assignment, liabilities and creditors as stated, and that nothing would be realized for unpreferred creditors.

He raised by his answer but one question, that of payment, and claimed that the company received the notes of November 30, 1881, as payment, and that therefore the notes set out in the bill, the proceeds of the consigned goods, were the property of Wallace & Cranston, and passed under the assignment. He relied upon the letters of November 30 and December 5, as establishing this fact, and attached copies of the letters to his answer.

By consent, the bill was heard at the adjourned term, before a jury. The evidence showed that demand had been made upon Black, assignee, for the notes and accounts, and that he had refused to surrender them, because he considered they passed under the assignment.

That he had to date collected about five hundred dollars of the claims, but had kept the money separate, to await the result of this bill.

The other facts have heretofore been stated, or will sufficiently appear in the grounds for new trial, etc., hereafter named.

Under the ruling of the court, the jury, on January 23, 1883, returned a verdict for the defendant.

During the term, complainant moved for a new trial, filing its motion and brief of evidence under the approval of the court.    Among others, the following grounds were set out in the motion:

" Because the court erred in ruling out so much of the answers of O. Washburne and S. C. Washburne, taken by commission, as wen' to show the gin company did not accept the notes as payment, and in discharge of the contract of November 18, 1881.  Also, in ruling out that part of the answer of O. Washburne, secretary of the company, relating to a conversation had with W. H. Warren (member of the firm of Warren, Wallace & Co., who went out June 10, 1881), November 28, 1881, in Atlanta, in which he told Warren, in reply to Warren's statement that Wallace & Cranston, by December 1, would send on cash and their notes in settlement of gin account, that the company would not receive the notes in lieu of cash, as it accepted nothing in payment except cash; Washburne asked Warren to so say to Wallace & Cranston upon his return to Augusta that night.    Also the answer of S. C. Washburne, book-keeper of the company, who received the notes, showing what was intended by 'placing at your credit'."

This evidence is set forth in full in 2d and 3d grounds of the motion for a new trial.

The court ruled out this evidence, on the ground that the letters of November 30 and December 5 made a new contract, and that parol evidence could not be introduced to explain them, or for the purpose of showing the intention with which the notes were received, etc.

1. If the judge placed the proper construction upon the subsequent dealings between these parties to the original contract, then he was unquestionably right in rejecting the parol evidence offered in explanation of the terms of what he holds to be a " new contract," as shown by the

Hall's Self-Feeding Cotton Gin Company *vs.* Black, assignee, *et al.*

offer contained in the letter of Wallace & Cranston to the complainants, and their reply to the same, accepting the arrangement proposed.

Was this a new contract between these parties, or merely a mode of making a remittance by the agents to their principals? Did the agents use the term "payment" in its strict legal, or in its popular sense? Was it their intention to treat these notes as payment, whether they were met at maturity or not, or whether they were ever paid? Was the proposition made to exchange a liability of higher grade, and secured by title to property and another name, which they were bound to guarantee, and did, by the very terms of the engagement, guarantee, for one of lower grade, and without any security whatever? Was this proposition made in terms? and if so, did the complainants say, by their letter of the 5th December, that they accepted such terms, and returned thanks for the favor? We cannot so conclude. We think the transaction amounted to nothing more than a remittance of money in the ordinary course of business, upon the one part, and a civil acknowledgment of its receipt, upon the other. The agents made no application to be relieved from any of their obligations to their principals; they merely asked indulgence from their creditors, and forbearance to enforce the collection of what was due to them; and this was all that was assented to by the latter. This, it seems to us, is the natural and necessary meaning of this transaction, apart from any other evidence than that contained in the letters and other writings in evidence; and to this effect the jury should have been instructed.

The Code, §2867, expressly declares that bank checks, notes, etc., are not payment until themselves paid. A bill, acceptance, or note of the debtor or a third person, is not an extinguishment of the original demand, unless there is an express agreement to receive it as payment. *Weaver vs. Nixon & Wester*, 69 Ga., 699. In this case, Jackson, C. J., concurred on special

grounds, and in his opinion gave, as it seems to his present colleagues, the true reason for the doctrine. He said: " The question turns on the intention of the parties. Here the debtor intended to settle. The creditors intended to settle, if they received their money; but they did not receive it. Had they been guilty of *laches*, the loss would have fallen upon them ; as they were not, it falls on the debtor." This was in a case where the check of a third party was turned over by the debtor to the creditor, but which was not realized in money, in consequence of the failure of the party drawing it. A striking instance of the application of this doctrine is afforded by the case of *Kupferman vs. McGehee, trustee, et al.*, 63 *Ga.*, 250.

2. In the present case, the real question to be solved was, what was the intention of the parties? Now, how was this intention to be ascertained? If it could be gathered with certainty from the papers in evidence, then there was no need to resort to the attending circumstances; but if the papers themselves were ambiguous, as they evidently were, then parol evidence was admissible to establish it. Code, §§3801, 2757, sub-sec. 1.

3. At most, it is doubtful if this letter and the reply amounted to anything more than a receipt, which is " always only *prima facie* evidence of payment, and may be denied or explained by parol." Code, §3807.

From this it follows that there was error in the interpretation placed by the court upon this transaction; and in the rejection of the evidence offered to show what was the intention of the parties, and to exhibit its true character.

Judgment reversed.