### 24847. NASH MOTORS CO. *v.* HARRISON CO.

DECIDED DECEMBER 24, 1935.

334

*Sumter M. Kelley, Spalding, MacDougald, Sibley & Brock,* for plaintiff in error.

*Jones, Powers & Williams,* contra.

JENKINS, P. J. According to the stipulated facts, the plaintiff, J. M. Harrison & Company, was a distributor of automobiles for the defendant manufacturer, located in Wisconsin. Under their contract, cars were to be delivered either to the distributor or directly to dealers operating under it, by common carrier with sight draft and bill of lading attached, drawn on the distributor. A practice, however, had developed between the parties, under which quick deliveries of cars had been made at the factory to distributors and their dealers, known as "factory driveaways," and some distributors had delayed their payments until the receipt of invoices for the delivered cars. On May 26, 1932, the manufacturer sent to distributors, including the plaintiff, a letter expressing dissatisfaction with this method of payment, and stating: "This is to advise you that, effective June 1, each and every driveaway must be settled for, by cashier's check, before delivery of the car or cars will be made from our factories." On an order from a dealer in Knoxville, Tennessee, through the distributor, for three automobiles, the distributor wrote to the Knoxville dealer, on January 3, 1933, to present "check" to the manufacturer for the purchase-price of $2040.93, and wrote to the manufacturer to obtain "check" for this amount. The dealer purchased a cashier's check for the correct amount from a then active Knoxville bank, payable to the manufacturer's order; and coincident with the delivery of the machines to the dealer at the factory, the manufacturer accepted this check without objection, charged the sales price of the cars against the distributor, and credited its account with the amount of the check. With promptness exercised by all, the manufacturer deposited the check to its checking account in a Wisconsin bank, the bank forwarded it for collection to the Chicago Federal Reserve Bank, and the latter bank forwarded it for collection to the branch of the Atlanta Federal Reserve Bank in Nashville, Tennessee, which forwarded it to the bank at Knoxville for payment. On January 17, 1933, the Knoxville bank stamped "Paid" on the check, charged the amount on its own books against its account

with the Federal Reserve Bank of Atlanta, and sent a credit memorandum, but not cash, to the Federal Reserve Bank. The Knoxville bank continued business on January 18, closed because of a holiday on January 19, and was taken over by a receiver on January 20. The Federal Reserve Bank of Atlanta never charged the credit memorandum to the account of the Knoxville bank; but after the receivership, and successive charges back by the banks, the account of the manufacturer was finally charged with the amount. The Knoxville bank retained its own check, and its receiver has retained it, and has taken over the credit of the bank with the Atlanta Federal Reserve Bank. The manufacturer deducted the amount of the check from funds in its hands belonging to the distributor. The instant suit is an attachment and garnishment, brought by the distributor for the recovery of this amount and interest. The judge, sitting without a jury, entered a judgment for the plaintiff, assigning as his reason, that, although the cashier's check was not an absolute but only a conditional payment, "the court is of the opinion that under the facts, as disclosed by the agreed statement and the law applicable thereto, the check was paid."

Although, under our statute and the general rule, "bank checks and promissory notes are not payment until themselves paid" (Code of 1933, § 20-1004), they nevertheless constitute payment if the creditor has agreed to accept or has received them as such. *Mims v. McDowell*, 4 *Ga.* 182, 185; *Wylly v. Collins*, 9 *Ga.* 223 (12); *Norton v. Paragon Oil Can Co.*, 98 *Ga.* 468, 470 (25 S. E. 501); *Butler v. Barnes*, 8 *Ga. App.* 513 (3) (69 S. E. 923); *Holland v. Mutual Fertilizer Co.*, 8 *Ga. App.* 714 (2) (70 S. E. 151); *Lang v. Shaw*, 6 *Ga. App.* 747 (65 S. E. 789); Tayloe *v.* Merchants Fire Ins. Co., 9 How. 390 (13 L. ed. 187); McMahon *v.* U. S. Life Ins. Co., 128 Fed. 388; Stewart *v.* Union Mutual Life Ins. Co., 155 N. Y. 257 (49 N. E. 876, 42 L. R. A. 147); Cowen *v.* Indianapolis Life Ins. Co., 116 Fla. 814 (157 So. 180). Under the stipulated facts of the instant case, the defendant manufacturer expressly instructed the plaintiff distributor in writing, that, when the distributor or any of its dealers received cars at the defendant's factory, the cars "must be settled for by cashier's check." Where, therefore, the plaintiff accepted this positive instruction by having one of its dealers procure a "cashier's check" on a then active

bank and deliver it to the defendant as a payment of the purchase-price of automobiles delivered to the dealer, and wrote to the manufacturer to obtain from the dealer such a "check," and the manufacturer, without objecting to the plaintiff or the dealer as to this method of payment, received the check, delivered the cars to the dealer, deposited the check to its own account in a bank, and credited the distributor's account with the amount, such delivery and agreed acceptance of the check constituted an absolute and not a conditional payment. Accordingly, the manufacturer had no right to deduct the amount of the check from funds in its hands belonging to the distributor, after the drawee bank had failed subsequently to the deposit of the check, and after the bank of deposit, following successive charges back by the banks handling the check, had charged the amount against the account of the manufacturer. A judgment in favor of the plaintiff for the principal of this amount and interest was demanded. This is true irrespective of the correctness of the reason assigned by the court, that the check, in the opinion of the judge, had actually been paid. Therefore it is unnecessary for this court to determine whether the Federal Reserve Board regulations or the Wisconsin statute, relative to deposits of checks in banks for collection, and payments and remittances between banks for checks, would affect and control any one except the bank depositor and the banks themselves; and whether, as to third persons such as the plaintiff, the mere stamping of "Paid" by the drawer-drawee bank on the cashier's check, and the mere entry of payment by this bank on its own books, would constitute an actual payment of the check, where there was no remittance of cash, but only a credit memorandum of another bank, which never honored the memorandum but returned the check to the drawer-drawee bank, and where that bank and its receiver continued to hold the check. See, in this connection, *Foster* v. *Peoples Bank,* 42 *Ga. App.* 102 (155 S. E. 62), s. c. 47 *Ga. App.* 447 (177 S. E. 721); Wisconsin Acts of 1929, § 220. 15 (9, 11); U. S. Pipe & Foundry Co. *v.* Hornell, 146 Misc. 812 (263 N. Y. Supp. 89), and cit.; Federal Reserve Bank *v.* Malloy, 264 U. S. 163 (44 Sup. Ct. 296, 68 L. ed. 617), and cit.; Stout Lumber Co. *v.* Hayes, 25 Fed. (2d) 841; Stone *v.* Wachovia Bank & Trust Co., 145 S. C. 166 (143 S. E. 27); Ætna Life Ins. Co. *v.* Eakins, 143 Okla. 52 (287 Pac. 402). See also *Smith Roofing Co.*

v. *Mitchell,* 117 *Ga.* 772 (45 S. E. 47, 97 Am. St. R. 217); *Comer.* v. *Dufour,* 95 *Ga.* 376 (22 S. E. 543, 30 L. R. A. 300, 51 Am. St. R. 89); *Palmer* v. *Harrison,* 165 *Ga.* 842 (142 S. E. 276).

*Judgment affirmed. Stephens and Sutton, JJ., concur.*