21389. KENNEDY *et al.* v. BATEMAN.

Argued September 12, 1961—Decided November 9, 1961—
Rehearing denied November 21, 1961.

*Maxwell A. Hines,* for plaintiffs in error.
*William V. George, Morgan C. Stanford,* contra.

Grice, Justice. Did the evidence authorize cancellation of the release involved here? Other questions are raised but, as we view the case, are not necessary for decision.

An action for personal injuries resulting from an automobile accident was brought in the Superior Court of Tift County,

Georgia, by Mrs. Ellie Mae Bateman against Morrison Kennedy and C. H. Pless, individually and trading as Kennedy-Pless Company. After the defendants filed a special plea and an answer, both pleading that the plaintiff had, for a consideration, executed in their favor a release exonerating them from any liability to her due to the accident, the plaintiff amended her petition, alleging mutual mistake of fact. Included in her amended petition were allegations that she signed a release in favor of the defendants as to the accident under the belief that her injuries were not serious or permanent; and that, upon later learning the extent and seriousness of the injuries, she tendered back to the defendants the check given to her and her husband as consideration for the release. Her prayers included cancellation of the release and damages.

Responding to the prayers of the petition, the jury's verdict included: cancellation of the release and a sum for damages. Thereupon, the defendants made a motion for a judgment notwithstanding the verdict upon the ground that the evidence did not authorize the jury to find in favor of cancellation of the release. The defendants also filed a motion for new trial, which was amended to include seven special grounds relating to the charge of the court, and to its rulings upon the admission of evidence. The trial judge denied both motions.

The release, signed the day following the accident, recited, among other things, that the plaintiff and her husband, for $1,520.54 acknowledged to have been received, released the defendants "of and from any and all claims, demands, rights and causes of action, of whatsoever kind or nature arising from or by reason of any and *all known and unknown, foreseen and unforeseen* bodily and personal injuries, loss and damage to property, *and the consequences thereof, resulting and to result,* from a wreck which happened on or about the 18th day of July, 1957, at or near Tifton, Georgia. . ." (Emphasis supplied.) It also recited that "we further state that we have carefully read the foregoing release and know the contents thereof, and we sign the same as our own free acts." Plaintiff's and her husband's signatures appear, along with the names of two witnesses, and a separate acknowledgment before a notary public.

The evidence as to the execution of this release is without any suggestion whatever of mental incapacity, duress, or fraud which would void such a document. The most that is charged by the plaintiff is that she, the physician who attended her, and the defendant's agent were laboring under a mutual mistake as to the seriousness and permanency of her injuries.

It is not necessary to review all of the evidence surrounding the accident, medical treatment of the plaintiff, negotiations culminating in the signing of the release, and subsequent diagnosis and treatment of the plaintiff's injuries by a different physician. We also deem it unnecessary to determine whether there was mutual mistake of fact warranting cancellation or whether there was mere ignorance of fact so as to deny it. The terms of the release itself are decisive.

The situation at bar is governed by such decisions as *James v. Tarpley*, 209 Ga. 421 (73 SE2d 188), where the plaintiff had, by written release, settled her claim for personal injuries, but later sought cancellation of the release upon the ground that the parties were laboring under a mutual mistake of fact as to the extent of the injuries which she had sustained. Speaking for this court, Mr. Justice Hawkins said (Headnote 1): ". . . In this case there is no allegation of fraud, misrepresentation, misplaced confidence, undue influence, or other act that might cause the contract to be set aside [citations]. The injured party did not have to sign the contract of release. If the parties to the contract intended that it should only compensate and relieve from liability for damage to an automobile and a laceration on the head of the plaintiff, then they should have so stated in the writing. They did not do this, but, on the contrary, clearly anticipated that other injuries might show up later when they recited in the release that the defendants were being released and forever discharged 'from all . . . suits . . . claims and demands whatsoever . . . as a result of or growing out of any and all injuries both to persons and . . . damages to property resulting or to result or which might result' from the accident [citations]."

The ruling quoted above is in accord with the rule existing generally. "Parties may preclude recovery for all injuries,

whether known or unknown, if it is their intention at the time to do so. . . If a person releases his claim for damages for injuries, ignorant of the facts which may affect such injuries; and meaning to waive all inquiry thereinto and investigation thereof, any mistake with reference thereto is not a mistake in a legal sense. The great weight of authority supports the doctrine that a release of a claim for personal injuries cannot be avoided merely because the injuries have proved more serious than the releasor, at the time of executing the release, believed them to be, or because the releasor made a bad bargain on account of a wrong estimate of the damages which would accrue." 45 Am. Jur. 684, 685, Release, § 19.

Also, "A release may be avoided where the releasor can show that it was executed by mutual mistake . . . unless it further appears that the parties intended that claims for all injuries, whether known or unknown at the time of the execution of the release, be relinquished." 76 C.J.S. 645, Release, § 25.

Here, the contract of release, executed by the plaintiff and her husband in favor of the defendants, specifically included "any and all claims, demands, rights and causes of action, of whatsoever kind or nature arising from or by reason of any and all known and unknown, foreseen and unforeseen bodily and personal injuries . . . and the consequences thereof, resulting and to result. . . ." Therefore, the plaintiff cannot, upon learning that her injuries are more severe than she originally believed them to be, obtain cancellation of this release on the ground of mutual mistake.

In view of the foregoing, the evidence did not authorize the jury to cancel the release.

Since this ruling disposes of the case, we deem it unnecessary to consider the grounds contained in the defendants' motion for a new trial.

Direction is given that, when the remittitur from this court reaches the trial court, the verdict for the plaintiff be vacated and final judgment be entered in favor of the defendants in accordance with their motion.

*Judgment reversed with direction. All the Justices concur, except Head, P. J., and Mobley, J., who dissent.*

HEAD, Presiding Justice, dissenting. I am convinced that the judgments of the trial judge denying the motion for new trial and the motion for judgment notwithstanding the verdict should have been affirmed by this court.

In so far as Georgia authorities are concerned, the majority opinion rests on the decision of this court in *James v. Tarpley*, 209 Ga. 421 (73 SE2d 188). In *James v. Tarpley*, the majority opinion stated the rule that a court of equity may rescind and cancel a contract upon the ground of mistake of fact material to the contract of one party only. However, the rule was applied by the court that ignorance of a fact due to negligence is no cause for rescinding a contract, since in that case the complaining party did not consult a physician, and was not advised that the injuries suffered were of a minor nature. In the present case, the plaintiff alleged, and the evidence amply authorized the finding, that the contract relied upon by the defendant was entered into by both parties upon a mistake of fact based upon the representations of a physician that the plaintiff's injuries were of a very minor character. *James v. Tarpley*, supra, is not in point on its facts with the present case.

It appears from the record that the insurance representative of the defendants called the physician consulted by Mrs. Bateman, the plaintiff, by telephone, in the presence of the plaintiff and her husband, and in connection with this telephone conversation, testified in part as follows:

"Q. Did you not tell Mrs. Bateman with the group, 'Dr. Fleming said you are O. K.'?

"A. 'Will be O.K.,' I believe is right.

"Q. And did you not add, 'In a few days'?

"A. Possibly so."

The testimony of the plaintiff was to the effect that the agent for the insurance company did say that the plaintiff would be all right in a few days, and the insurance agent's answer, being evasive, should be construed most strongly against him, and his admission must be taken as true that he did say that she would be all right in a few days. There is no conflict as to the representation of the physician to the plaintiff that her injuries were of a minor character, and there is nothing in the record to

indicate that the plaintiff had any reason to believe that she had anything more than minor injuries.

What more should a court of equity require of an injured person, who has a desire to ascertain the extent of injuries received, than to rely upon the advice of a physician skilled in the treatment of such injuries? The allegations and proof of mutual mistake of fact were amply sufficient to authorize the jury to set aside the release.

In my view, however, perhaps a more serious objection to the direction by this court that a judgment be entered for the defendants appears from the record in the case. The defendants brought to this court by their bill of exceptions all of the proceedings in the cause. The petition originally did not set out the agreement between the parties which this court has held is conclusive. The defendants filed a plea denominated a special plea, which was, in fact, a plea in abatement, based on alleged payment, and setting out the agreement by the parties. Subsequently the plaintiff amended her petition making allegations to show a mutual mistake of fact, which, as hereinbefore pointed out, was supported by the evidence. Counsel for the defendants never invoked any ruling by the trial court on their plea in abatement, alleging payment, and none was made.

Demurrers, pleas, and answers shall be disposed of in the order named, and all demurrers and pleas shall be determined before trial. *Code* § 81-1002; *Smith v. Hornsby*, 70 Ga. 552; *Anderson v. Fulton County Home Builders*, 147 Ga. 104 (92 SE 934) ; *Seaboard Air-Line Ry. Co. v. Jolly*, 160 Ga. 315 (127 SE 765). A party may waive or renounce what the law has established in his favor. *Code* § 102-106; *Jones v. Mills*, 216 Ga. 616 (118 SE2d 484). Where a defendant goes to trial without invoking a ruling by the trial judge on a demurrer or plea filed by such defendant, the defendant thereby waives any right that he might have to a ruling thereon, and the court does not err in treating such demurrers or pleas as abandoned. *Grant v. Grant*, 202 Ga. 40 (2) (41 SE2d 534).

It is my view that the defendants, having abandoned their plea in abatement asserting payment by not invoking a ruling of the trial court thereon, could not thereafter urge the same mat-

ters set up in the plea in abatement as a basis for a judgment in their favor notwithstanding the verdict. If the plea in abatement asserting payment was relied upon, a ruling of the court should have been invoked by counsel for the defendants. Having elected to go to trial on the allegations of the petition asserting mutual mistake, and the evidence amply supporting the verdict of the jury rescinding the contract, the defendants were not entitled to a judgment notwithstanding the verdict. The act of 1957 (Ga. L. 1957, pp. 224, 236; *Code Ann.* § 110-113), providing for a judgment notwithstanding the verdict, did not repeal other provisions of the law applicable to orderly procedure in the courts of this State.

The plea of payment was never established under the evidence in the case. The undisputed evidence shows that, at the time the release was executed by the plaintiff, no amount was paid to her, that some days later a check or draft was received through the mail, payable jointly to Mr. and Mrs. Bateman, and that an amount included therein represented damages to the automobile owned by Mr. Bateman. The undisputed evidence further shows that this check was returned to the insurance company and retained by the insurance company, and that a check was subsequently issued in a like amount and mailed to Mr. and Mrs. Bateman, and that this check was never paid or tendered for payment.

"Bank checks and promissory notes are not payment until themselves paid." *Code* § 20-1004. "A bill, acceptance, or note of the debtor or a third person is not an extinguishment of the original demand, unless there is an express agreement to receive it as payment." *Hall's Self-Feeding Cotton Gin Co. v. Black*, 71 Ga. 450, 456; *Norton v. Paragon Oil-Can Co.*, 98 Ga. 468, 470 (25 SE 501). It is the rule that, where a check or draft is accepted as payment, it operates as payment. *McEachern v. Industrial Life &c. Insurance Co.*, 51 Ga. App. 422 (180 SE 625); *Nash Motors Co. v. Harrison Co.*, 52 Ga. App. 333 (183 SE 202); *Atlanta & West Point R. Co. v. McCord*, 54 Ga. App. 811, 817 (189 SE 403); *Pan-American Life Ins. Co. v. Carter*, 57 Ga. App. 294 (195 SE 326). See also *Howard v. Ga. Home Ins. Co.*, 102 Ga. 137 (29 SE 143). The present case does not fall within

any rule stated in any of the cases above cited. At no time did the defendants pay any amount or tender a check to the plaintiff for her damages. The check issued by the insurance company was to the plaintiff and her husband, and included damages to the automobile. There is no evidence that the plaintiff ever agreed to accept any check of any character. There is no evidence that her husband was her agent, or that she had authorized him to receive a check in her behalf, and when the insurance company retained the original check, and issued another check in like amount and mailed it to the plaintiff and her husband, the most that the defendants were entitled to insist upon was that it was a question of fact for the jury as to whether or not there had been a rescission of the contract by a return of the check. Certainly the plaintiff had complied with the requirement that one who seeks rescission of a contract must restore or offer to restore the consideration received thereunder. *Williams v. Fouche*, 157 Ga. 227 (121 SE 217).

The foregoing is sufficient, in my judgment, to show that the defendants were not entitled to a judgment notwithstanding the verdict under any theory.