30472. SISSON, guardian, *v.* AMERICAN MUTUAL LIABILITY INSURANCE COMPANY *et al.*

DECIDED MAY 25, 1944. REHEARING DENIED JUNE 9, 1944.

*Randall Evans Jr., Jack D. Evans, George N..Blanos,* for plaintiff.' *Neely, Marshall & Greene,* for defendants.

FELTON, J. This is a workmen's compensation case. The claim of Mrs. James T. Sisson, as temporary guardian of her husband, James T. Sisson, was denied by a director, whose findings and award were approved by the board. The superior court's affirmance of the award denying compensation is excepted to.·

James T. Sisson, received an injury arising out of and in the course of his employment. He was later adjudged insane. The

issue in the case was whether the injury caused or contributed to his insanity, or whether the insanity was due to other causes exclusively. The employer and the insurance carrier contended that the insanity was the manic-depressive type, a type which is not brought on by trauma, but by worry, which they particularly contended in this case was due to a confession of infidelity by Mrs. Sisson, known to Mr. Sisson. The director made among others the following finding of fact which was approved by the board: "It was also shown by the defendant in this case that in the summer of 1942 Mrs. Sisson had made a confession of certain acts of infidelity of which she had been guilty, and that this fact was known by her husband, and that it caused him much worry and anxiety." The knowledge of such alleged confession was the only cause suggested which might have caused the alleged worrying allegedly resulting in insanity. The presumption is that the denial of compensation was because the director and the board were influenced in a material degree by such a finding of fact. This being true, if such a finding was unauthorized the award was based at least partially on an unauthorized finding of fact and the whole award was vitiated thereby and must be reversed, even though the award might have been authorized by other findings of fact authorized and legally made. Let us minutely examine the evidence to determine the validity of the above-quoted finding. Mrs. Sisson was asked whether she made a confession to Mrs. Graham, an evangelist, that she had been unfaithful to her husband, to which question she made no answer. Mrs. Sisson was informed that she might refuse to answer the question, and she stated, "Well, I will not." Then these questions were asked and answers given as follows: "You stand under your constitutional rights to answer that question on the ground it might incriminate you?" Answer, "Yes, sir." Question: "And that applies to other questions that you have had illicit relations?" Answer, "I have not." Question: "He accused you of being unfaithful to him?" Answer: "He did not." Question: "Did you go to Mrs. Graham and have any conversation about it?" Answer: "No, sir." Question: "Did you know that the people down around Union Point were talking and discussing your family affairs?" Answer: "Of course I heard about it, but they have told things that were untrue." Question: "Your husband heard this gossip the same as you did?" Answer: "Why of course

he did." Mrs. Graham, the evangelist, to whom rumor had it Mrs. Sisson had confessed infidelity to her husband, was excused from testifying, specifically on the ground of confidential relations. She did testify, however, that Mrs. Sisson wanted her to pray for her and told her what the trouble was, and "then she wanted me to go with her and help straighten it out, and as far as I know she has lived all right since." Mrs. Graham was asked if she talked to Mr. Sisson. She answered, "Yes, sir, I did once because he was with this woman, met the party, and he seemed to be perfectly delighted." She also testified that Mr. Sisson was present when Mrs. Sisson made a confession to Mrs. Meadows. There was no evidence that Mrs. Sisson confessed to being unfaithful to her husband either to Mrs. Graham, or to Mrs. Meadows, or to anybody else. There was evidence that around the mill where the employee worked there was a rumor, generally heard, that Mrs. Sisson had confessed infidelity, and several witnesses stated that in their opinion Mr. Sisson knew of them. While the testimony in the case, and the evidence of the rumors raise a suspicion that Mrs. Sisson did confess infidelity, there is no legal evidence to authorize such a finding. Although Mrs. Sisson stated that she claimed immunity from testifying on the subject, she denied having any conversation with Mrs. Graham about the subject of infidelity. Mrs. Graham's testimony that Mrs. Sisson confessed to Mrs. Meadows does not show of what guilty act she confessed. We repeat, there is no evidence to authorize the finding of the board that Mrs. Sisson confessed infidelity and that Mr. Sisson knew about it. Witness O. O. Scott testified that he discussed certain rumors with Mr. Sisson in 1941. This fact might easily be confusing. The rumors mentioned by Mr. Scott could not have been those concerning the confession, because whatever confessions were made were made in 1942, and Mr. Scott testified that the only time he discussed a rumor with Mr. Sisson was in 1941. In view of this conclusion it cannot be said that in spite of the unauthorized finding of fact the award is supported by the acceptance by the board of the expert testimony contradicted by contrary testimony, for the reason that the unauthorized finding might have influenced the acceptance of one theory of the insanity rather than the other. The same error which was inherent in the award in the case of *Wilson* v. *Swift & Co.*, 68 *Ga.* App. 701 (23 S. E. 2d, 261), is present here. These rulings do not

conflict with the principle that triers of fact may accept either one or the other of two conflicting lines of testimony, or with the principle that the findings of triers of fact are conclusive when there is evidence to support the findings. Here the findings are affected by material conclusions not authorized by the evidence.

The court erred in dismissing the appeal.

*Judgment reversed. Sutton, P. J., and Parker, J., concur.*