The court did not err in affirming the award of the State Board of Workmen's Compensation for any of the reasons assigned, as set out in the opinion.
 DECIDED OCTOBER 6, 1945. — REHEARING DENIED OCTOBER 25, 1945.
Hubert Hillhouse, hereinafter called the claimant, filed his claim for compensation for hernia under the provisions of the Code, § 114-412, as an employee of the Bell Aircraft Corporation (hereinafter called the employer), and Hartford Accident and Indemnity Company (hereinafter called the insurer).
A single director on the hearing found in favor of the claimant. This judgment was appealed to the full board, which approved the findings of the single director. The award of the full board was appealed to the superior court, which affirmed the award. This judgment is excepted to by the employer and insurer. We set forth the judgment of award of the single director, as follows: "The above stated claim was heard before the undersigned director at Marietta, Georgia, December 20, 1944. At the time the above captioned was called to be heard, the attorney for the defendant employer and/or insurer stated for the record that the claimant was earning 95 cents per hour and working six days per week. or a regular weekly salary of $49.40. It was further stated by said attorney that the medical report of Dr. Grady Coker could be admitted into the record.
There were no admissions as to the accident. There were only two witnesses who testified at this hearing, the claimant in his own behalf and Dr. R. L. Brown for the defendant.
"The undisputed testimony of the claimant will show that on or about January 15, 1944, the claimant working in department No. 68 and while pushing a rack on a concrete floor, said rack weighing between 700 and 800 pounds, no wheels under said rack, it being shown by the testimony that this rack was a scaffold used for the purpose of holding the tail of the airplane up for protection, it being further shown that the rack was made of four by six timbers approximately eight feet high and twelve feet long, and while the claimant was pushing said rack he strained himself *Page 123 
and felt like he had pushed something loose down in his groin. He did not associate the pain with either side but stated that he was in pain all over the lower part of his stomach, stating that at the time of the hearing he still hurt right down in the middle of his stomach. The foreman was immediately notified, whereupon the claimant was immediately sent to the first aid, and upon going to the first aid the claimant was sent to the plant hospital wherein the claimant was examined by Dr. P. D. Bailey, at which time it was hurt so badly that he was not able to continue further, it being shown by the claimant's testimony that after his accident he was given light work, but was unable to carry on a selective type of work after March 1, 1944. The claimant then returned to his home where he remained in bed part of the time and was unable to work for ten or eleven weeks, wherein he reported to Dr. Grady Coker on April 4, he living in that immediate vicinity, wherein Dr. Coker found him to be suffering with a hernia, the claimant stating that after the examination by Dr. Coker he secured a truss which held up his hernia, and he was able to work, having done some carpentry work. He stated that he was a carpenter by trade working some for himself and hired out some, and in addition thereto a little pittling work on the farm, stating that while this stomach and groin still pained him he was able to do the carpentry work and did work until he finished the job, stating that he had worked most of the time with the exception of the first ten or eleven weeks immediately after he left the above employer, and, after having had Dr. Grady Coker to examine him and prescribing the proper truss for him, he was able to work and did work until the time of the hearing. The claimant further stated that he was in need of an operation for the hernia and was at the present time seeking one, and that he had never refused the operation nor had he been offered an operation or any compensation.
"Dr. R. L. Brown testified that he had examined the claimant on February 28, 1944, stating that the claimant had come to him on that date complaining of pain in the region of the left lower *Page 124 
abdomen, stating that the claimant had given him a history of his intermittent pain following a strain which had been experienced by the claimant on January 15, 1944; said examination revealed no evidence of a hernia on either side; however, he found moderate tenderness in the left lower quadrant of the abdomen, stating that the patient had given a history of having had kidney stones on the left side at the age of twenty and another attack in 1939, stating that he had suffered pain on urination shortly after the accident on January 15 and had some frequency but no hematorrhea. The urinalysis on February 28, 1944, was negative and the X-ray film revealed no evidence of calculae at that time. However, he stated that did not rule out definitely the presence of kidney stones, stating that some do not show up in a simple flat plate. At that time the physician testified that he could not ascribe the claimant's symptoms to his alleged injury, but felt that further observation might make the case more clear. He stated that the patient had told him that the pain was severe enough to keep him from working, stating also that the patient had given a history of having a back injury following a motorcycle accident.
"Dr. Brown testified that it was a fact that Dr. P. D. Bailey, another of the employer's physicians, had examined the claimant on the date of the accident, wherein Dr. Bailey reported having found a hernia on the left side. He stated that he was unable to answer as to why Dr. Bailey had found a hernia on that date and he was unable to find one February 28. However, he was positive that at that time he found no hernia on either side of the claimant, nor could Dr. Brown explain why on April 6, Dr. Grady Coker of Canton, Georgia, had found an inguinal hernia on the right side. He further testified that his medical records as prepared by the clinic would show that Dr. J. S. Wiseley, another of the employer's physicians, had examined the claimant as late as May 8, 1944, even after the claimant had been examined by Dr. Grady Coker, wherein it was found he had a right inguinal hernia, wherein Dr. Wiseley did not find anything wrong with the claimant, and Dr. Wiseley examined him because he wanted a medical release, but did not grant him a release due to the fact that he found nothing wrong with the claimant. The physician stated further that upon examination at the time of the hearing he does now find a right inguinal hernia. *Page 125 
"From the above facts the director makes the followingFindings of fact: The director finds from the claimant's testimony, which was not in dispute, that he did suffer an accident, said accident arising out of and in the course of his employment, when attempting to move a heavy rack or scaffold he suffered a strain, said strain resulting in hernia as was evidenced by the report of Dr. P. D. Bailey, who immediately after the accident examined the claimant and found the claimant to be suffering with a hernia.
"The director further finds that the employer had immediate notice of the accident when as a matter of fact the claimant was examined by said Dr. Bailey, the plant's physician, on the date of the occurrence of said accident. The confusing question before the director is why Dr. Bailey reported that he found a left acute inguinal hernia on the date of the accident, when on February 28 Dr. Brown could find no hernia on either side, and later on April 6 Dr. Grady Coker found a hernia on the right side. The director is unable to reconcile the conflict in the findings of these physicians except to say that it is possible that Dr. Bailey on the date of the accident when he found the hernia made a mistake and reported the left side when as a matter of fact the hernia existed on the right side.
"The claimant testified that he was hurting all over in his lower abdomen, and even at the time of the hearing, nearly a year later, he stated that his pain was more in the middle of his stomach. The director is unable to understand how Dr. Brown examined the claimant on February 28 and revealed no hernia on either side, nor is the director able to understand the finding of Dr. J. S. Wisely on May 8, when he found no hernia on either side, notwithstanding the fact that the claimant had been examined on April 6 by Dr. Grady Coker when he was found to have a hernia on the right side. The most that can be said by the director is that at the time of the hearing the claimant was suffering a right inguinal hernia, as evidenced by Dr. Brown's examination during said hearing, and it is the presumption of the director that the right hernia the claimant exhibited at the time of the hearing was the hernia he sustained due to his accident on January 15, 1944, and that said hernia did occur as a result of said injury and occurred immediately as evidenced by Dr. Bailey.
"The director further finds that after the accident, when the *Page 126 
claimant had been fitted with some sort of suspensory, he continued to work until approximately March 1, at which time he was unable to work further and was disabled as a result of his accident for a period of ten weeks, at which time after securing a truss upon recommendation of Dr. Coker he then was again able to work. It, therefore, follows that the claimant would be entitled to recover compensation beginning as of March 8, 1944, through May 10, 1944.
"It is further the opinion of the undersigned director that the claimant should be hospitalized and the right inguinal hernia repaired by radical operation.
"The director further finds from Dr. Brown's testimony that the claimant some years prior to his employment with the Bell Aircraft Corporation had suffered with kidney stones and also a severe back injury due to a motorcycle accident.
"The director finds from all of the testimony that the accident of January 15, 1944, had not aggravated any pre-existing condition that the claimant may or may not have had as a result of the motorcycle accident to claimant's back or the condition of kidney stones, the sole disability being confined to the right inguinal hernia.
"The director, therefore, concludes as a matter of law that the claimant has met all five requirements as set out in section 114-412 dealing with hernia, it having been shown by the testimony that the claimant had received a pre-employment examination by the physician of his employer, wherein it was shown that he was not suffering with a hernia at the time of his employment.
"Award therefore, in accordance with the above and foregoing findings of fact and conclusions of law, it is the award of the undersigned Director that the employer and/or insurer begin the payment of compensation to the claimant as of March 8, 1944, at the rate of $20 per week, it being shown by the claimant's testimony together with the admission of the attorney for the defendant employer and/or insurer, that the claimant's regular weekly salary was in excess of $40, this compensation to claimant to continue to May 8, 1944.
"In addition thereto, it is further directed that upon receipt of this award the employer and/or insurer will tender to the claimant adequate medical and hospitalization for the radical repair of *Page 127 
the right inguinal hernia; and upon entrance into the hospital and until such time after employer's attending physician dismisses the claimant as able to return to work, it is directed that the employer and/or insurer resume the payments of compensation.
"It appearing that the compensation due the claimant from March 8, 1944, through May 8, 1944, has accrued, it is due and payable upon receipt of this award. And it is so ordered."
The assignment of error is general to the effect that the record discloses that there is no competent evidence to support the award, and that there is no evidence "at all to support the very foundation of the award." The gist of this contention is based upon the ground that the director took into consideration hearsay testimony of Dr. Bailey, an employee of the Bell Aircraft Corporation in its clinic. Dr. Bailey was not sworn as a witness. Dr. Brown, who was also an employee of the Bell Aircraft Corporation along with Dr. Bailey in the clinic, was sworn as a witness. On the day of the alleged injury, January 15, 1944, the claimant was sent to the clinic by his foreman. When he arrived there, he was examined by Dr. Bailey, who made a record of his findings on the prescribed form. Dr. Bailey was not sworn as a witness, nor was his report tendered in evidence, but Dr. Brown, who was sworn as a witness (for the employer and the insurer), was questioned at length by both the director and the attorney for the claimant concerning the contents of the report of Dr. Bailey, and Dr. Bailey's findings. No objection was made during the entire hearing as to the admissibility of Dr. Bailey's findings and the evidence thereof. Dr. Brown had this report of Dr. Bailey in court and referred to it in his testimony on behalf of the employer and the insurer.
The case of the American Mutual Liability Insurance Company
v. Kent, 71 Ga. 453 (31 S.E.2d 81), cited and relied on by the employer and the insurer, is based upon the case of Sisson
v. American Mutual Liability Insurance Co., 71 Ga. App. 284
(30 S.E.2d 501). The Sisson case reversed by the Supreme Court in American Mutual Liability Insurance Company v.Sisson, 198 Ga. 623 (32 S.E.2d 295).
Even if the testimony in question was hearsay and was admitted *Page 128 
with or without objection, it would not require the setting aside of the finding of the State Board of Workmen's Compensation Without considering this testimony, which the employer and the insurer contends was hearsay, there was evidence to support the award of the State Board of Workmen's Compensation. The judge of the superior court did not err in affirming the award of compensation. Whisenant v. Bostick, 61 Ga. App. 447 (6 S.E.2d 146); Sears, Roebuck Co. v. Griggs, 48 Ga. App. 585
(173 S.E. 194).
Judgment affirmed. Broyles, C. J., and MacIntyre, J.,concur.