[No. 9615.    Department Two.    January 27, 1912.]

HARRIET STAHL, *Respondent*, v. LULU SCHWARTZ, *Executrix etc., Appellant*.[1]

VENUE—CHANGE—BIAS OF JUDGE—SUFFICIENCY OF SHOWING. The fact that a judge on a former trial had decided issues in favor of one party and had been active in promoting a settlement between the parties, does not show bias or prejudice entitling a party to a change of venue on the second trial.

APPEAL—REVIEW—HARMLESS ERROR. Error in denying a change of venue is not prejudicial, where on trial *de novo*, the judgment must be sustained in any event.

CONTRACTS — CONSIDERATION — SUFFICIENCY — MISCONCEPTION OF WILL. Where a will gave plaintiff, during widowhood, one-half of the income of an estate, amounting to several hundred dollars a month, and made specific legacies to certain minors to be paid at majority out of the whole estate, without interest, there is no consideration for a contract between plaintiff and the executrix whereby the plaintiff was to receive but one hundred dollars a month out of the income, the balance to accumulate as a fund out of which to pay the legacies, the principal of the estate being ample to pay them, and her legacy not being subordinate; since the contract is neither a benefit to the plaintiff, nor a detriment to the executrix.

SAME. The contract could not be considered an advantage to the plaintiff from the fact that, if she lived to her full expectation of life, and did not remarry, she would in the end receive a greater income from the estate by providing the accumulations with which to pay the legacies of the minors; it being a violation of public policy to enforce a condition of widowhood.

WILLS—CONSTRUCTION—LEGACIES—INCOME — PAYMENT. Under a will making specific legacies to minors to be paid at the age of majority, and giving one-half of the income to plaintiff "during widowhood," hers is a specific legacy, not subordinate to those of

[1] Reported in 120 Pac. 856.

the minors, and entitles her to the full income until the minors are paid, and then on the reduced estate until she remarries; and it is immaterial that a direction is made that none of the real estate shall be sold until five years after the testator's death, since that only postpones fulfillment in case of deficiency of personal assets.

EQUITY—RELIEF FROM MISTAKE—MISCONSTRUCTION OF WILL—MISTAKE OF LAW OR FACT. Equity will grant relief from a mistake as a mistake of fact, where parties erroneously construe a will as requiring legacies to be paid out of the income, and contract with reference to such erroneous construction; the test involving mutual mistake of fact being whether the contract would have been entered into had there been no mistake.

ESTOPPEL—IN PAIS—PREJUDICE TO RIGHTS OF OTHER PARTY. Acceptance of money due plaintiff under a will, pursuant to a contract made under a misconstruction of the will and mutual mistake of fact, will not estop her from recovering the balance due on a proper construction of the will, where no injury results to the remainder of the estate, and the contract in no way limited or interfered with the right and duty of the executrix to manage the estate.

Appeal from a judgment of the superior court for Walla Walla county, Brents, J., entered April 13, 1911, upon findings in favor of the plaintiff, in an action to set aside a contract and for an accounting. Affirmed.

*Dunphy, Evans & Garrecht,* for appellant.

*Rader & Barker,* for respondent.

CHADWICK, J.—Catherine Stahl died, testate, on April 16, 1908, leaving an estate which was appraised at $102,825. Her will provided:

"(1) I direct the payment of all my just debts out of my estate.

"(2) To each of my grandchildren, Magdalene Louise, Ernest William and Henrietta, children of my deceased son, Henry Stahl, I give and bequeath ten thousand dollars, the said sum without interest to be paid to each of my said grandchildren on the arrival of each at the age of majority. . . .

"(3) I will and direct that none of my real estate be sold for five years after my death.

"(4) I give, devise and bequeath unto my daughter, Lulu Schwartz, one-half of the remainder of my property of

whatsoever character and wheresoever situated, of which I may die seized, to be hers absolutely.

"(5)   In the other half of all my property of whatsoever character and wheresoever situated, of which I may die seized, I will, bequeath and devise a life estate to my son, Frank H. Stahl.   After determination of said life estate, I will, devise and bequeath the remainder of said one-half of all my estate to any child or children of my said son Frank H. Stahl, born to him in lawful wedlock after the date of this will, but should there be no such child or children born to him in lawful wedlock after the date of this will, or the issue of such child or children, I then give, devise and bequeath said remaining one-half of my estate as follows:   One-half thereof to the children of my deceased son, Henry H. Stahl in equal shares and one-half thereof to the children of my daughter, Lulu Schwartz in equal shares, subject, however, to a trust to pay the income thereof to the surviving widow of my said son, Frank H. Stahl, during her widowhood, but should she remarry she is thereupon to be paid out of the trust estate, five thousand dollars and all the interest of said widow in said estate is thereupon to cease and be determined.

"(6)   The contingent provisions herein are not to be construed as either hindering the segregation of my estate or as preventing the same remaining intact after the year of administration  .  .  .  and I give unto my said executors full power to manage and control and in any way use and deal with any and all property of my estate during its administration without any application to any court for leave or confirmation.   I do also empower my said executors to continue any business conducted by me or dispose of the same on such terms as they may see fit.   In making investments or reinvestments or in conducting or continuing any business said executors are expressly authorized and empowered to proceed and act as they may deem wise and prudent; all without leave or approval of any court and without liability or responsibility for the consequences of their acts or for losses incurred as a result thereof."

Her son Frank H. Stahl died October 28, 1909, leaving plaintiff, Harriet Stahl, his widow.   Just after the death of Frank H. Stahl, defendant Lulu Schwartz, who had the active management of the estate prior to the death of Frank H.

Stahl, took up with plaintiff the matter of the future management and disposition of the estate, and proceeding upon the theory that the specific legacies provided in the will were payable out of the income rather than the body of the estate, an agreement was entered into, the material parts of which follow:

"Witnesseth: That whereas Catherine Stahl died leaving her last will and testament, bearing date January 30th, 1907, heretofore duly admitted to probate in the superior court of the state of Washington, for Walla Walla county, as the last will and testament of decedent, reference to which is hereto made, and

"Whereas, her surviving son, Frank H. Stahl, has recently died, leaving surviving him said second party as his widow, and

"Whereas, the will of decedent provides that each of her grandchildren, Magdalene Louise, Ernest William and Jenrietta, children of her deceased son, Henry Stahl, shall each be paid at the age of majority the sum of $10,000 without interest, and

"Whereas, each of the parties hereto are mutually desirous of creating a fund out of the rents, issues and profits of the estate of decedent to be applied towards the payment to each of said grandchildren, their respective bequests of $10,000 each, on the arrival of each of them at the age of majority.

"Now, therefore, in consideration of the premises and the mutual benefits to be derived therefrom between each of the parties hereto, and the sum of one dollar this day in hand paid each to the other, said parties hereto mutually covenant and agree as follows, to wit:

"That each party hereto shall be paid out of the income of the estate of decedent on or before the 15th day of each and every month hereafter, the sum of $100, until the aforesaid named grandchildren shall have been paid at their majority the sum of $10,000 each under the terms and in the manner provided therefor in the last will and testament of decedent.

"That after each and every of said grandchildren have been fully paid their respective bequests aforesaid and as provided for in said will of decedent, each party hereto shall be

paid out of the income of the estate of decedent on or before the 15th day of each and every month thereafter, the sum of $100, and on or before the 15th day of January, of each and every succeeding year after the payment of the aforesaid bequests to the aforesaid named grandchildren, each party hereto shall be entitled to an equal undivided one-half of the residue of the net income received from the estate of decedent, less however the sum of $1,000 to be kept on hand to be used for operating expenses incident to the care and maintenance of the estate of decedent. . . .

"That any debts owing by decedent or any debts or expenses incurred in the administration and settlement of the estate of decedent, shall also be deducted from any income therefrom.

"That should said second party remarry, then she is to be paid thereafter the sum of $5,000, and no more, as her full interest in the estate of decedent as is provided for under the terms of said last will and testament of decedent, reference to which said last will and testament is hereto made for more particularity, and upon any such remarriage by her this agreement shall terminate."

The parties acted upon this agreement until August 4, 1910, when plaintiff brought this suit, praying that the contract be set aside, that an accounting be had, and that she be paid such proportion of the estate as she is entitled to under the will. Plaintiff alleges that she was induced to enter into the contract by the art and intrigue of the defendant Lulu Schwartz, who, by representations which were false and fraudulent, led her to believe that one-half of the net income of the estate would amount to but little, if any, more than $100 per month; that plaintiff was not entitled to anything until after the legacies had been paid, and that haste was necessary in order to defeat the possible claim of a child alleged to be the daughter of Frank H. Stahl; that, at the time she signed the agreement, she had never seen the will, and relied wholly upon the representations of defendant, who was alleged to be a woman of large experience in business and of unusual shrewdness in handling property. It is further alleged that, as soon as plaintiff ascertained her legal rights,

she began this action. A trial was had after issue joined upon the material allegations of the complaint, and the trial judge was of opinion that the contract best served the interests of all parties, and should be allowed to stand as a definition of the rights of plaintiff and defendant and of their future relation to the estate. Thereafter, the court, being further informed, and conceiving that he had erred in his construction of the will, granted a motion for a new trial.

At this point we meet the first assignment of error. Defendant filed a motion for a change of venue; or if that could not be had, that another judge be called to try the case. This motion, supported by an affidavit alleging the bias and partisanship of the judge, was denied, and the case proceeded to trial. The real meat of the affidavit of prejudice lies in this: that, after a full hearing at the former trial, the court found that there had been no overreaching or fraudulent representations, that Mrs. Schwartz had acted in good faith, and that the contract was made with sufficient understanding to sustain it; and further:

"I will say frankly, I see no ground which might justify me in setting aside the contract, and I think it will be better for all parties that they go on under the contract and endeavor to so manage the estate as to pay these legacies, and leave something to be divided between the parties after it is done."

It is also alleged that the judge was overactive in an endeavor to promote a settlement between the parties. In all this we find no warrant for holding that there was a sufficient, or any, showing of bias or prejudice. Upon motion, the trial court has a right to set aside any decree or judgment if in his opinion justice has not been done (*Sylvester v. Olson*, 63 Wash. 285, 115 Pac. 175), and his doing so should not operate as an indictment of bias, prejudice, or interest.

We shall not review the cases offered as sustaining either the motion or the conduct of the court. Nor shall we discuss the suggestion that, whereas the legislature had just passed

a law (Laws 1911, p. 611) which had not then become effective, but which nevertheless indicated the policy of the legislature to compel a change of judges, a refusal to abide by it indicates a partisanship which would warrant us in holding the refusal of the court to be an abuse of discretion. As we view the case, it being before us to be decided *de novo*, the error, if we found it to be such, would not be prejudicial. Furthermore, if appellant's construction of the law be adopted, it would result in a reinstatement of the original judgment. If the respondent's contentions are sustained, the contract could not be upheld in any event. So that we may, and we do, hold that defendant was actuated by no improper motives, and did not wilfully or intentionally mislead plaintiff, but that both parties were proceeding in good faith to protect their mutual interests, but under a misconception of the true facts, and hence in ignorance of the rights of the plaintiff.

Therefore, rejecting all of the argument and authorities offered to sustain the judgment of the court on the ground of fraud and undue influence, and coming to the will itself, we are undivided in the opinion that there was and is no consideration which the law would regard as either good or valuable to sustain the contract. It is fundamental that a consideration must be of some benefit to the promisor, or work some detriment to the promisee. When measured by this test, the contract not only did not work a benefit to plaintiff, but actually operated to deprive her of a most substantial present interest in the estate; and likewise, instead of operating to the detriment of the promisee, it worked a great advantage to her, for by paying the legacies out of the income instead of the estate, plaintiff would be paying, without any return or compensation whatever, one-half of the legacies which should be charged to the body of the estate, and therefore against the share of the defendant or her children.

We cannot subscribe to appellant's interpretation of the will, which is that the income to which plaintiff is entitled is

to come out of the one-half of the estate after all debts and prior bequests have been discharged. The subject of debts may be dismissed, for the will of a person could not operate to defeat them, and consideration of them is not now material. But the will does not postpone the right of the plaintiff to share the income until after the legacies are paid, and we cannot. The will is that the legacies be paid upon the attainment of full age by the legatees. No attempt is made to provide a fund out of which they are to be satisfied, or to make them subordinate to the legacies due plaintiff, which by reason of the death of her husband is as certain and as lawfully due as those payable to the grandchildren.

Considerable importance is attached to the third clause of the will, it being suggested that, in order to execute it, it became necessary to reserve a part of the income in order to meet the payment of certain legacies which would be payable before the five-year term had expired, and that this is enough to sustain the contract. It may be that, if there be no personal property, those to whom specific legacies have been given—the grandchildren—might have to wait five years or until the real property could be sold. (See section six of the will.) But section three in no way diminishes the right of plaintiff, for she is entitled to the income on one-half of the property, not from some future date or upon any contingency, but "during her widowhood." To give effect to these words, we must hold that her right attached when she became a widow, and must continue until she remarries; in which event she too might have to wait the five-year term before she could demand the $5,000, which is then provided in lieu of the income. It seems plain to us that plaintiff is entitled to the income, not after the legacies are paid, as contended by the defendant, but *until* they are paid, and thereafter upon the one-half of the estate as thereby reduced. The will seems to have been drawn with a dominant thought; that is, to give the estate, after remembering the grandchildren, to defendant and to Frank H. Stahl, each one-half. His

death being foreseen, provision was made for the "widow," the plaintiff. If the testatrix had seen fit to reserve and limit her bounty, she might have done so. She did not, and we cannot; for the province of a court of equity is to carry out the will if its terms are certain, and not to substitute its will, although it might regard it as more advantageous to the remainder of the estate.

But it is said that equity will not relieve a party where a contract is entered into under a mistake of law. This may be granted, although there are some cases to the contrary. But this rule, when applied, is attended with certain restrictions and qualifications which are as well established as the rule itself. The contracting parties must have a true understanding of the facts. If so, then a mistake of law, or rather, of the legal consequences of their act, will not be relieved. But if facts be not understood, the rule does not apply. In this case, the parties mistook the fact. They put a wrong construction upon the will. Upon proper issue joined, the construction of a will is a question of law for the court; but when a false construction is put upon it by interested parties and they contract with reference thereto, it is a mistake of fact and not of law. The truest test in cases involving mutual mistake of fact is whether the contract would have been entered into had there been no mistake. *Kowalke v. Milwaukee Elec. R. & Light Co.*, 103 Wis. 472, 79 N. W. 762, 74 Am. St. 877. Applying this test, it seems certain that plaintiff would not have surrendered an income of five or six hundred dollars a month, unless she and defendant had proceeded on the misconception of fact that it was necessary to retain the income to pay the legacies. The distinction between a mistake as to the legal effect of a contract and a mistake as to the subject-matter of the contract must be kept in mind.

"Contracts are daily made upon the assumption of certain facts, and the parties give their assent, not absolutely, but upon the implied condition that the reality conforms to the

2—67 WASH.

assumption. If it should prove otherwise the condition is broken and equity relieves from the apparent agreement because there is no real assent." 20 Am. & Eng. Ency. Law (2d ed.), 812.

In the pursuit of this subject we have examined many cases, but found none which states the controlling principle more clearly than that of *Morgan v. Bell*, 3 Wash. 554, 28 Pac. 925, 16 L. R. A. 614. Bell, a widower with one child, a resident of Ohio, agreed in writing to sell certain real property in this state. Our community property laws, of which he was wholly ignorant, intervened so that he could not carry out his contract. Morgan had solicited the contract, as defendant had in this case. Action was brought for specific performance and general damages. The maxim *ignorantia legis neminem excusat*, "a mistake of law," was relied on by Morgan, and that doctrine applied by the trial judge. After stating the rule and the exception which we have noted, Judge Dunbar, who wrote the opinion, said:

"The material question here is, does this case fall within the rule or the exception? And in the outset, in discussing this interesting question, to avoid the discussion of unnecessary propositions, it is well to keep in mind a well defined distinction between ignorance of an antecedent existing right which is to be affected by the agreement, and the legal import of the agreement itself. Thus in this case, if Bell's defense was that he did not know the legal effect of the agreement which he entered into, in the absence of fraud or inequitable conduct on the part of plaintiffs, it would not be a defense to the action; but this is not the defense which he offers, but it is, that he was mistaken about his right to enter into such a contract. 'Mistakes, therefore,' says Mr. Pomeroy, 'of a person with respect to his own personal private rights and liabilities may properly be regarded, as in great measure they are, and may be dealt with as mistakes of facts. Courts have constantly felt and acted upon this view, though not always avowedly.' But there is nothing in the proposition announced by Judge Story, as cited by respondent, that conflicts with this proposition. Many instances are there given where the courts refuse to relieve from a mistake of law, but

they are all cases where the party was asking relief from the consequences flowing from a misunderstanding of the legal effect of the contract.   Indeed, Judge Story, in § 130 of his work on Equity Jurisprudence, endorses the same distinction: 'Sec. 130.   There may be a solid ground for a distinction between cases where the party acts or agrees in ignorance of any title in him, or upon a supposition of a clear title in another, and cases where there is a doubt or controversy or litigation between parties as to their respective rights.   In the former cases (as has been already suggested), the party seems to labor in some sort under a mistake of fact as well as of law.   He supposes, as a matter of fact, that he has no title, and that the other party has title to the property.' The principle in the case at bar is the same, though the facts are reversed.   Bell supposed, as a matter of fact, that he had the title; he did not intend to convey land which he did not possess, but proceeded upon the supposition that it was his to convey.   It was not a mistake in calculation as to the legal consequences of his agreement, but purely and simply a mistake of an existing antecedent right affecting his title."

See, also, *Sanford v. Hartford Ins. Co.*, 11 Wash. 653, 40 Pac. 609.   Space will not permit further quotation from these authorities or a review of others, but reference to them will disclose a thorough appreciation of the rule governing this case.

Coming back to the question of consideration, defendant has sought to show by the testimony of a public accountant the condition of the estate, and its probable income, gross and net, for a term of years; and it is contended that, whereas plaintiff was about twenty-nine years of age when the contract was made, her life expectancy was 36.73 years; that if she abides her contract and allows the legacies to be paid out of the income she would, at the end of her expectancy, receive $173,618.79, as against $169,118.79 under the will. It is said the contract is to the advantage of plaintiff.   This argument is specious but not sound.   It does not take into account the present right of plaintiff under the will, or the very decided element of human nature.   That plaintiff might not be willing to remain a widow was foreseen by the

testatrix, and provision was made accordingly; and for this or any other court to put a condition of widowhood upon her in order to secure for her two or three thousand dollars at the age of sixty—to bind her to a life of celibacy for the money that there is in it—would be an unwarranted usurpation and a violation of sound public policy. Plaintiff is young. It may be that she will see fit to remarry, in which event she may take the $5,000 which would then be due her.

Defendant has invoked the doctrine of estoppel. It is said that plaintiff has accepted the amount due her under the contract for a long time without objection; that defendant has paid $10,000 to one of the legatees, and has not turned property into money that might have been converted upon a better market than now exists. We find in these facts nothing which would warrant us in applying this doctrine. Plaintiff was entitled to receive all that she received out of the income, and more. The payment of the legacies was provided in the will, and the contract in no way interferes with or limits the right and duty of appellant to manage the estate for its best interests. If she did not turn the property into money when it might have been disposed of, it cannot be charged either to the contract or to the fault of respondent; and although it may be admitted that defendant has done some things which she might not have done, and omitted to do some things which she would have done but for the contract, the subject-matter of this controversy is not in law the property of the defendant, but of the estate of Catherine Stahl; and so long as the effect of our judgment is to execute the will of Catherine Stahl, and no injury results to the remainder which can be charged to the contract or the conduct of plaintiff, there can be no estoppel.

Finding no error, the judgment of the lower court is affirmed.

DUNBAR, C. J., MORRIS, ELLIS, and CROW, JJ., concur.