[No. 32764. Department Two. June 21, 1954.]

MELVIN LEE SILEN, *Respondent,* v. ZELMA SILEN, *Appellant.*[1]

[1]Reported in 271 P. (2d) 674.

*Mifflin & Mifflin* and *Rummens, Griffin, Short & Cressman,* for appellant.

*Levinson & Friedman* and *Koenigsberg & Roberts,* for respondent.

DONWORTH, J.—Defendant wife appeals from an order of the superior court directing that she desist from interfering with plaintiff husband's right to receive a three-thousand-dollar fund which will result from the conversion of an endowment insurance policy on his life into a straight life insurance policy.

A default divorce was granted to defendant wife from plaintiff husband on March 31, 1953. The divorce decree confirmed a stipulation and property settlement agreement executed by the parties on March 30, 1953, and also confirmed a supplement thereto entered into by them on the day of the divorce.

By terms of the stipulation and property settlement agreement, the property of the parties was divided between them as provided therein, and the property awarded to each party became his separate property immediately. The agreement provided that plaintiff husband was to pay defendant

wife certain alimony for a period of eighteen months and one hundred dollars a month for the support of their minor son (whose custody was awarded to defendant) until the son, then fourteen years old, attained his majority.

The supplement to the stipulation and property settlement agreement (hereafter referred to as the supplemental agreement) disposed of two insurance policies, each in the sum of ten thousand dollars, on the life of plaintiff.

We set out in full that part of the supplemental agreement which caused the controversy resulting in this appeal:

"As a supplement to the Stipulation and Property Settlement Agreement executed and delivered between plaintiff and defendant on March 30, 1953, the plaintiff and defendant do hereby further stipulate and agree as follows:

"I

"That omitted from the said Stipulation were two policies of life insurance each in the sum of $10,000.00 on the life of plaintiff not theretofore disclosed by him, being 10-year Endowment Policy No. 718-71-23, .dated October 30, 1950 on life of plaintiff in Mutual Life Insurance Company of New York and Policy No. 718-71-24 dated October 30, 1950, on life of plaintiff in Mutual Life Insurance Company of New York, *in each of which defendant releases her community interest and which policies become the property of plaintiff subject, however, to his performance of the remaining provisions of this Supplement.*

"II

"That one of said policies of life insurance on the life of plaintiff in Mutual Life Insurance Company of New York shall be used by plaintiff to perform that portion of paragraph VI. of said Stipulation pursuant to which plaintiff shall irrevocably constitute JAMES STANTON SILEN, minor son of plaintiff and defendant, as beneficiary in such policy of life insurance on the life of plaintiff in the sum of $10,000.00, *keeping and maintaining said policy in good standing at all times, free from loan or draw against the same and with premiums thereon paid by plaintiff,* without contribution from defendant, until said minor son attains the age of 21 years, whereupon such policy of insurance (herewith delivered to Wesley J. Mifflin as attorney for defendant and to be held by him until said minor attains the age of 21 years) shall be released to plaintiff.

## "III

"That on the other of said policies on the life of plaintiff in Mutual Life Insurance Company of New York the plaintiff shall likewise irrevocably constitute JAMES STANTON SILEN, minor son of plaintiff and defendant, as beneficiary thereon, *keeping and maintaining said policy of life insurance in good standing at all times, free from loan or draw against the same, with premiums paid thereon by plaintiff,* without contribution from defendant, until said minor son of plaintiff and defendant attains the age of 25 years, whereupon said policy of insurance (herewith delivered to Wesley J. Mifflin as attorney for defendant, to be held by him hereunder) shall be released to plaintiff, provided, however, that, upon the minor son of plaintiff and defendant attaining the age of 21 years, plaintiff may then elect to use either one of said policies on his life in Mutual Life Insurance Company of New York for the purpose of fulfilling his remaining obligation hereunder; *and further provided, however, that plaintiff may at any time convert either of said policies to straight life so long as the amount of the policy so converted remains at $10,000.00.*"   (Italics ours.)

Both the original stipulation and property settlement agreement and the supplemental agreement were drawn up by the attorneys for defendant, into whose possession the policies had been delivered.

In August, 1953, plaintiff wanted to convert both policies into straight life insurance policies, in accordance with the final proviso to paragraph III of the supplemental agreement. Before the attorneys for defendant surrendered the two policies to the representative of the insurance company in order that the conversion could be accomplished, they discovered that the conversion of the endowment policy would result in the release of approximately three thousand dollars.

An endowment contract, it should be noted, is

" . . . a policy which agrees to pay to the insured, if living at the expiration of a certain period, a specified amount of money; and in the event of his death in the interim, agrees to pay the face amount of the policy to a designated beneficiary." 1 Appleman, Insurance Law and Practice, p. 11, § 4.

An "ordinary" or "straight life" insurance policy, on the other hand, is defined as

" . . . written upon the life of an individual for a fixed amount at a definite annual premium. A premium is paid upon it each year in the same amount during the entire life-time of the insured. It never becomes paid up." 1 Appleman, Insurance Law and Practice, p. 8, § 2.

These definitions make it plain that there is considerable difference between an endowment policy and a straight life policy, inasmuch as the endowment policy combines an investment program with life insurance, whereas a straight life policy does not. The supplemental agreement drawn by appellant's attorneys ignored the difference between endowment and straight life policies, however, and made no provision as to the disposition of the fund that was certain to result from specifically permitting the conversion of the endowment policy to straight life.

On August 28, 1953, defendant through her attorneys deposited the policies with the insurance company with a written request for the company to hold the three thousand dollars

" . . . in your possession *as the property of Mr. Silen* but impounded and undisbursed until he shall have performed his obligations under the Supplement to make payment of the premiums on the two $10,000.00 policies until the son attains the age of 21 years in the one instance and the age of 25 years in the other; it being our position that such $3,000.00 proceeds are held by you subject to your payment of premiums on such policies out of the same if such premiums are not paid by Mr. Silen when they become due." (Italics ours.)

When plaintiff learned that defendant was making the claim that the three-thousand-dollar fund resulting from the conversion of the policies should be held by the insurance company as security for the payment of future premiums, he obtained an order requiring defendant to appear and show cause why she should not be ordered to desist from interfering with plaintiff's right to convert the policies and to receive the avails of the conversion.

The hearing on the show cause order was held September 21, 1953. The matter was heard upon affidavits and documentary evidence. The basic facts were not in dispute. At

the conclusion of the hearing, the trial court entered an order directing defendant to desist from interfering with plaintiff's right to convert endowment policy No. 718-71-23 and to receive the proceeds available by reason of said conversion.

Feeling aggrieved by the entry of the order, defendant has appealed to this court. She makes four assignments of error, which are argued together in support of her two basic contentions, set out in her brief in this language:

"(1) The policies the subject matter of the Supplement were the community property of the parties, the release of appellant's community interest in which was expressly conditioned 'subject, however, to his (respondent's) performance of the remaining provisions of this Supplement,' *and that appellant's release of her community interest in the policies was not and could not be effective until performance by respondent of the Supplement,* the vital provisions of which, for the protection of the minor son of the parties, are that respondent keep and maintain the policies 'in good standing at all times, free from loan or draw against the same and with premiums thereon paid by plaintiff, without contribution from defendant, until the said minor son attains the age of' 21 years in the one instance and 25 years in the other.

"(2) That respondent's exercise of his right to convert the policy or policies to straight life (so that in the instance of the one policy his obligation for payment of yearly premium thereon is cut from $1636.20 to $515.30) is in accordance with the exception in the Supplement expressly so allowing *but that respondent's demand for payment by the insurance company to him of the sum of approximately $3000.00 in cash arising from the conversion of one of the policies is in breach and violation of the language of the Supplement in which in two places he stipulates that there shall be 'no loan or draw against the same.'*" (Italics ours.)

Analysis of appellant's contentions reveals that she is asserting (1) that she still has some community interest in the insurance policies and will continue to have until the parties' son is twenty-five years old, and (2) that respondent cannot receive the three thousand dollars payable on the conversion of the endowment policy without breaching that section of the supplemental agreement which provides that there shall be no "loan or draw" against the policies.

On the first point, appellant clearly is wrong. The original stipulation and property settlement agreement provided that the property awarded to each party should become their separate property immediately. The supplemental agreement further stipulated that appellant "releases her community interest" in the insurance policies, which "become the property of plaintiff." The words "releases" and "become," both in the present tense, clearly evidenced that it was the intention of the parties that the policies were to become respondent's separate property at the time the supplemental agreement was executed.

Furthermore, the letter from appellant's attorneys to the insurance company referred to above specifically described the fund as "the property of Mr. Silen." She did not claim a direct interest in the fund herself, but demanded that it be held by the insurance company as security for the payment of future premiums. Thus, appellant recognized at that time that she had divested herself of her community interest in the endowment policy.

The fact that the policies remained subject to respondent's "performance of the remaining provisions of this Supplement" did not prevent the insurance policies from becoming respondent's separate property. Appellant accepted in lieu of her community interest therein respondent's unsecured promise to irrevocably constitute their son as beneficiary of the policy for the designated period and to keep and maintain the policy in good standing at all times.

The basic rule in the construction of contracts is that the intention of the parties to the agreement must control. *Jacobs v. Teachout,* 126 Wash. 569, 219 Pac. 38.

Consequently, when the intent of the parties is clearly evident, as it is in this case, courts have nothing to construe and must be governed by the intention of the parties as expressed in the written instrument. *Thomle v. Soundview Pulp Co.,* 181 Wash. 1, 42 P. (2d) 19.

We hold that appellant had no *community* interest in the insurance policies after the supplemental agreement was executed.

Appellant's second contention is that respondent cannot receive the three thousand dollars payable on the conversion of the endowment policy without breaching the provisions of the supplemental agreement which prohibit respondent from making any "loan or draw" against the policies which are being held by appellant's attorney pursuant to the provisions of the supplemental agreement. Appellant asserts that the three-thousand-dollar refund is either a "loan" or a "draw."

■■ We are certain that the three-thousand-dollar refund cannot be a "loan," since there is no obligation on the part of respondent to repay it. We do not decide whether the receipt of the three thousand dollars by him would constitute a "draw" prohibited by the supplemental agreement, because, as we view the contract, it is unnecessary to decide that question.

It is evident from the entire tenor of the supplemental agreement that the primary intention of the parties was to provide insurance protection for the son of the parties in the face amount of twenty thousand dollars until he becomes of legal age and in the face amount of ten thousand dollars thereafter until he is twenty-five years old in the event respondent should die during that period. The language of the agreement prohibiting respondent from making any loan or draw against the policies was intended to prevent respondent from reducing the amount of money that would be paid to the son in such event.

By agreeing that respondent could convert either of the policies to a straight life policy, appellant showed that she did not care whether respondent kept an endowment or straight life policy in force as long as the son was assured of the specified amount of insurance protection. The obvious purpose of the provision that respondent must keep and maintain the policies in good standing "free from loan or draw against the same" was that *at all times respondent must keep in force insurance policies which would pay the son ten thousand dollars on each policy upon respondent's death.*

Consequently, we hold that the policies which respondent must keep free from loan or draw at all times are those policies which will continue to provide a total of twenty thousand dollars worth of insurance protection for the son until he is twenty-one years old and ten thousand dollars until he is twenty-five years old. Obviously, then, when respondent elected to exercise his option to convert the original policies (including the endowment policy) to two new straight life policies, the substituted straight life policies became the ones which respondent must keep "free from loan or draw." Appellant has no further interest in the proceeds of the endowment policy after the conversion, because respondent's exercise of his option to convert the endowment policy removed that policy from the operation of the supplemental agreement. Thereafter, respondent's obligations under the agreement became operative only as to the substituted straight life policies.

What appellant seeks in this action is not a *construction* of the supplemental agreement but a *rewriting* of the agreement and a judicial insertion therein of a new provision by which respondent would be required to leave the three-thousand-dollar fund with the insurance company to guarantee payment of future premiums on the straight life policies. Courts can construe contracts when they are ambiguous, but cannot, under the guise of interpretation, rewrite parties' contracts. *Chaffee v. Chaffee,* 19 Wn. (2d) 607, 145 P. (2d) 244; *Merlin v. Rodine,* 32 Wn. (2d) 757, 203 P. (2d) 683.

In the supplemental agreement, appellant accepted respondent's naked promise to pay the future premiums on the insurance policies without demanding any guarantee fund to insure payment. She cannot now get more than she bargained to receive.

We have considered the arguments presented by appellant in her reply brief and are of the opinion that they are either presented too late (see Rule on Appeal 41, 34A Wn. (2d) 42) or are without merit.

By the terms of the supplemental agreement, respondent

is entitled to receive the proceeds resulting from the conversion of the endowment policy free from any claim by appellant that the three thousand dollars should be held by the insurance company to insure the performance of respondent's naked promise to pay the future premiums on the straight life policies.

Therefore, the order appealed from must be and hereby is affirmed.

GRADY, C. J., SCHWELLENBACH, WEAVER, and OLSON, JJ., concur.

