[No. 38566. Department Two. January 19, 1967.]

DELMAR E. PEPPER et al., Appellants, v. GERALD NORMAN EVANSON et al., Respondents.*

*Reported in 422 P.2d 817.

*Carkeek, Harris, Harris, Myers & Vertrees* and *Ronald H. Mentele,* for appellants.

*Ferguson & Burdell* and *Thomas J. Greenan,* for respondents.

LANGENBACH, J.†—On April 18, 1964, respondents' automobile struck the ·automobile of appellants, Mr. and Mrs. Pepper, in an allegedly negligent manner. (The wives are

---

†Judge Langenbach is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

nominal parties and will not be further noticed.) Shortly after the accident, appellant experienced pains in the *right* side of his neck and in his right arm. It was his opinion that the pains were caused by the "reactivation" of an old injury. Two days after the accident he visited his physician.

Four days after the accident appellant submitted an accident report to respondent's insurance carrier. On June 10, 1964, he wrote the insurance company a letter which read in part:

> To date I have visited Dr. Callahan, an osteopathic surgeon on *two* occasions and talked with him on the phone once. The Dr.'s findings have been very inconclusive. I don't believe this is unusual for the type of injury involved.
>
> In 1950 I visited several doctors for symptoms similar to those I now have and was unable to get a diagnosis. A short time later I visited the Mayo Clinic in Rochester, Minn. From this visit I learned I had a crushed cervical disc. I underwent surgry to have about one half of the disc removed. This experience involved nearly six years from the time of an accident in the Army until the disc slipped completely and surgery was necessary. The operation required eight days in the hospital, five weeks of lost time from work and several years before normal activities weren't troublesome to me.
>
> The history of my past problem may or may not be important here, but it does give me some idea of what could develop. In fact, the distress I now have is not necessarily related to a healing or progressing condition. The injury could be getting better or worse.
>
> Since the accident with Mr. Evanson I have had repeated pain in my head, neck, back, right arm, and cases of dizziness. The real significance of these symptoms is intangible, however it certainly limits my activities now and makes me wonder.
>
> I would like very much to receive payment for my current expenses and leave the medical claim open. As you explained, this is not possible so I have tried to evaluate my position.
>
> . . . .
>
> I don't know what your reaction will be to this offer but I believe it to be a logical and conscientious approach on my part. Because of the minimum liability considered

and then reducing it by one half I would not be interested in settling for less than the $1,508.00.

On July 24, 1964, appellant signed a full and final general release of all claims arising out of the April accident. He accepted a check for $1,138 which he cashed.

Eight months later, early in 1965, a new disability arose in appellant's *left* side. He was required to return to his doctor and extensive surgery was performed on his left side. One of his physicians told him the newly appeared disability was caused by the 1964 accident. Appellant filed this action for injuries to his left side, alleged to have been caused by the April accident. Respondent pleaded contributory negligence and the "full and final" release as an affirmative defense. Appellant filed a reply which in part alleged that "a mutual mistake of fact existed which at that time neither party had knowledge, thereby voiding any contract of release."

 Of course, a contract executed by parties who are mutually mistaken as to an existing material fact is not, for that reason, void. But, such a contract may, in certain circumstances, be rescinded in equity. We will treat appellant's reply to respondent's answer as a plea for relief in equity to remove the impediment (created by the release) to the maintenance of his action at law for damages.

A formal decree for cancellation of the release is not necessary. In nearly all jurisdictions the claimant merely brings his action for damages; and to a plea setting out the general release he makes replication of the facts showing the mistake that makes it voidable. 3 Corbin, Contracts § 598 (1960).

Respondent moved for summary judgment based upon the pleadings and supporting affidavits. After a hearing, this motion was granted and appellant brought this appeal.

The only issue before us is whether the pleadings submitted to the trial court raised, when viewed most favorably to appellant's case, a genuine issue as to a material fact, which issue cannot be determined on motion for summary judgment. Briefly, the respondent is seeking to test, by this

motion, the issue of the alleged mutual mistake in the execution of the general release.

We are not dealing here with rescission by mutual assent of the parties. What the parties have brought together they may of course split asunder, saving always the rights of third parties. Here rescission of a contract of general release is being sought by only one of the parties.

The general rules applicable to the upsetting of releases for mutual mistake are easily stated:

1. When a release is in plain and unambiguous language, as is the release in this case, we have said that: (a) Before a plain, unambiguous instrument can be set aside on the ground of mutual mistake, the evidence must be clear and convincing. *Spratt v. Northern Pac. Ry.*, 90 Wash. 592, 156 Pac. 563 (1916). (b) The courts will not interpret the meaning of unambiguous contracts. *Silen v. Silen,* 44 Wn.2d 884, 271 P.2d 674 (1954). (c) Where a release contains plain and unambiguous language, parol evidence will not be admitted to vary the release, *Betcher v. Kunz,* 112 Wash. 563, 192 Pac. 955 (1920); *unless* the release was induced by fraud, false representations or overreaching. *Reynolds v. Day,* 93 Wash. 395, 161 Pac. 62 (1916).

2. A court of equity will limit a general release to matters contemplated by the parties at the time of its execution, *Bakamus v. Albert,* 1 Wn.2d 241, 95 P.2d 767 (1939); *but* that rule is not controlling when the release refers specifically to the matter being considered by the court, *Schwieger v. Harry W. Robbins & Co.,* 48 Wn.2d 22, 25, 290 P.2d 984 (1955). In this latter case we quoted the following language:

> "[I]f the words of a release fairly import a general discharge, their effect may not be limited so as to exclude a demand simply upon proof that at the time of its execution the releasor had no knowledge of the existence of the demand."

3. A mutual mistake must be one involving both parties, a mistake *independently* made by each party. If the defendant had no independent knowledge and accepted plaintiff's

own diagnosis and opinion, the mistake is unilateral. *Beaver v. Estate of Harris*, 67 Wn.2d 621, 409 P.2d 143 (1965).

4. The law favors the amicable settlement of claims when the settlement is secured without fraud, misrepresentation or overreaching. *Beaver, supra.*

It has been said that the truest test in cases involving mutual mistake is whether the contract would have been entered into had there been no mistake. *Stahl v. Schwartz*, 67 Wash. 25, 33, 120 Pac. 856 (1912). Here, the appellant must seek to show that the inclusion of the discharge for unknown claims was based upon a mutual mistake made *independently* by each party, and that *neither* party would (at the time of contracting) have intended to enter into the release had they a proper understanding of the material facts. Has the appellant raised a genuine issue of fact regarding the intention of respondent's insurance carrier? Two such questions are possible: (1) That the insurance carrier did not intend to include the discharge of unknown injuries in the release; or (2) that had it known the appellant had hidden injuries, it would never have entered into the release.

Here, the release specifically referred to the matter of injuries which might arise from the accident in the future. *Schwieger, supra.*

> . . . I hereby release, acquit, and forever discharge Gerald N. Evanson of and from any and all claims, demands, damages, costs, action or causes of action, loss of service, expenses, and compensation, on account of, or in any way growing out of, any and all known and unknown, foreseen and unforeseen bodily injuries or death, or damage to property resulting, or to result from an accident or occurrence, on or about the 18th day of April, 1964.
>
> It is understood and agreed that this is a full and final release of all claims of every nature and kind whatsoever, and releases claims that are known and unknown, suspected and unsuspected.

There is nothing in the release from which any inference can be drawn but that the parties intended fully to settle thereby any and all unknown and unforeseen claims arising

out of the accident. Indeed, appellant does not argue that the insurance carrier did not intend to include these words in the release.

Appellant's main argument is that if the insurance carrier had known of appellant's hidden injuries it would never have entered into the release. This is not as remarkable an assertion as at first might seem. If the settlement was made with reference to existing injuries, it would not be impossible to find that a mistake about the true extent of appellant's injuries was material on the question of the amount of money which should be paid. If the mistake was mutual and related to a very material element of the damage, it could defeat the intentions of the parties *at the time* the contract was entered into. We cannot assume that had the parties known the true extent of appellant's injuries the appellant would have been satisfied with the amount he received or that the respondent's insurance carrier would have been unwilling to pay more. A determination of the parties' true intentions at the time of contracting is difficult to make on a motion for summary judgment, but that does not mean that summary judgment was improperly granted in this case.

Here, appellant's affidavit shows that appellant, after consulting with his own doctor, initiated negotiations with the insurance company. In a long and lucid letter he evaluated his own condition and stated what he felt would be a fair settlement. He does not allege either that the insurance company contacted his doctor or that he was ever examined by a doctor provided by the insurance company. He stated in his affidavit:

> Since my problems after the accident were just about like those which brought on the need for surgery I was convinced that the car accident made these problems recurr [*sic*]. . . . In my letter to the insurance company I considered only these problems and . . . prior experience. . . . (I suggested that one half of the anticipated medical bills would be an adequate compromise settlement). [*sic*] I told them I was quoting a cost which I believed to be a minimum number of dollars that they could be liable for based upon my past experi-

ence and for this reason decided to be fair and reduce the figure by one half. I felt I was being fair and honest in evaluating the known factors and the known injury at that time. Neither of us at that time knew that there was anything else wrong with me.

In his letter of June 10, appellant said, "I would not be interested in settling for less than the $1,508.00." On July 24, he signed the "Release of All Claims" and accepted a check for $1,138. Over his endorsement of that check was printed:

By endorsement hereof payee hereby releases all claims arising out of the occurrence referred to on the face hereof against Western Pacific Insurance Company and where applicable, its insured . . . .

Appellant asserted that the accident caused injuries to his *left* side of which neither party knew at the time the release was entered into. We will consider that as proven. But one cannot read the appellant's affidavit without concluding that it was his position that the insurance company settled on the basis of the opinions, however mistaken, which he communicated to it in his letter.[1]

Mutual mistake is one of the recognized grounds whereby any contract may be set aside or vacated. What constitutes a mutual mistake must be clearly established.

There is ample authority holding a mutual mistake must be one involving both parties, a mistake independently made by each party.

In the case now being considered, the only information of plaintiff's condition was from the plaintiff himself. Defendant had no independent knowledge and he accepted plaintiff's own diagnosis and opinion of his injuries. If there was a mistake, it was a unilateral mistake, rather than a mutual mistake. *Beaver v. Estate of Harris*, 67 Wn.2d 621, 628, 409 P.2d 143 (1965).

A unilateral mistake is not one of the recognized grounds for setting aside a contract of release unless there is an element of fraud in the case.

---

[1]Indeed, appellant's brief argues that the letter "clearly . . . negates any knowledge . . . by either party of the existing condition on the left side . . . ."

However much we construe the pleadings against respondent and strain to find inferences favorable to appellant, this much remains clear, the pleadings do not bring into issue a mistake independently made by respondent's insurance carrier. Rather, they reveal that appellant made a mistake in diagnosing his true condition, upon which mistaken diagnosis the insurance company depended.

The judgment is affirmed.

DONWORTH, WEAVER, ROSELLINI, and HAMILTON, JJ., concur.

\*Reported in 422 P.2d 780.

†Judge Langenbach is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.