[No. 140-40454-1.    Division One.    February 16, 1970.]
Panel 1

JANET G. BLACK, *Appellant,* v. WESTERN LIFE INSURANCE COMPANY, *Respondent.*

*John R. Kramer,* for appellant.

*Davies, Pearson, Anderson, Pearson & Gadbow* and *Vincent Gadbow,* for respondent.

FARRIS, J.—While serving with the navy in 1961, Jack Moore Black applied for and was issued a $10,000 life insurance policy by the defendant Western Life Insurance Company. The premiums were paid each month by naval allotment until Black was discharged from the navy early in 1964. No payments were made from any other source. On May 10, 1964, Black was killed in an automobile accident. Western Life refused to pay on the policy to the beneficiary, Janet G. Black, sister of the insured, for the reason that the policy had lapsed.

The beneficiary Janet G. Black, is the plaintiff in this action. The insurance company's motion for a summary

judgment was granted by the trial court and the case was dismissed. The plaintiff appeals from the order of dismissal.

■ The plaintiff first contends that there are genuine issues of fact as to the date the policy took effect and as to the number of monthly payments made. A motion for summary judgment may be granted only where there is no genuine issue of material fact. *Balise v. Underwood*, 62 Wn.2d 195, 381 P.2d 966 (1963).

The insurance company records show that the policy took effect on September 1, 1961, the date requested by the insured in his application and that premiums were paid for 30 months. The navy records show that the first payment was mailed on August 28, 1961. Payments were mailed each month thereafter through January 29, 1964, for a total of 30 payments. Under these facts, the policy would have lapsed on March 1, 1964, and the 31-day grace period would have expired on April 2, 1964—38 days prior to the death.

According to the plaintiff, the first premium was not received by the insurance company until September 25, 1961, and the premium payments were continued for 31 months. Under these facts, the grace period would not have expired until May 26—16 days after the death.

The plaintiff relies upon the testimony of Richard J. Grass, a claims supervisor of the defendant, taken by deposition in St. Paul, Minnesota, by the plaintiff. Plaintiff's counsel asked:

Q How many payments do your records indicate that Mr. Black made? I want the number.

. . .

THE WITNESS: The copy of the premium record card I have in front of me indicates that 31 monthly premium payments were made.

In a later affidavit Mr. Grass stated that he had misread the premium record card and that what he thought was the 31 payments was in fact a code number indicating the discontinuance of the naval allotment.

■ In ruling on the motion for summary judgment, the court must consider the material evidence and all reasona-

ble inferences therefrom most favorable to the non-moving party. If reasonable men might reach different conclusions, the motion should be denied. *Wood v. Seattle,* 57 Wn.2d 469, 358 P.2d 140 (1960).

On the first question, there is no genuine dispute. The only conclusion that can be drawn from the evidence is that 30 payments were made. We need not decide whether the effective policy date was September 1, or September 25, since the 30-day grace period would have expired prior to the death, using either date.

Plaintiff's second contention is that the nonforfeiture provision of the policy kept it in force.

The relevant portions of the policy are as follows:

If this Policy shall have been in full force and effect for sufficient time to produce a cash surrender value as hereinafter provided, the Insured may elect within sixty days after the due date of any premium in default, but not later, any one of the following options:

. . .

Option 3—PAID-UP TERM INSURANCE.
Paragraph 16.

If the Insured shall not, within sixty days after the due date of a premium in default, make election as provided under the Nonforfeiture Benefits of the Policy, the insurance will be automatically continued as provided in Option 3 thereof.
Paragraph 17.

All values in the following Table assume that this Policy shall have been in force and the premiums paid in full to the end of the policy years stated, and that there shall be no indebtedness on this Policy. Due allowance will be made for any fractional year's premiums paid.

TABLE OF GUARANTEED VALUES PER $1,000 OF THE FACE AMOUNT

| Years' Premiums Paid | Loan or Cash | Paid–Up Life Insurance | Term Insurance For Face Amount of This Policy | |
|---|---|---|---|---|
| | Column 1 Dollars | Column 2 Dollars | Column 3 Years | Days |
| 3 | 5.70 | 16 | 2 | 90 |
| 4 | 17.60 | 49 | 6 | 199 |
| 5 | 29.74 | 81 | 10 | 103 |
| 6 | 42.13 | 113 | 13 | 154 |

Paragraph 18.

The effect of these provisions is that a policy value that has been created will not be forfeited. If there has been no election, the cash value must be used to buy term insurance in the face amount of the policy.

It is plaintiff's contention that she must be given "due allowance" for the 6 months premiums paid during the third year. The language "due allowance will be made for any fractional year's premiums paid" supports this contention.

The table supplies values as they exist at the end of full years. For periods other than full years, the policy provides that due allowance be given for the fractional year in accord with the table.

■ The defendant contends that the language in paragraph 16 requires that the policy be in effect for 3 years since the table provided shows no cash value prior to the end of the third full year. The concluding sentence of paragraph 18, in which the chart appears, conditions that limitation by specifying that due allowance be given for any fractional year's premiums paid. The language is clear and unambiguous and must be given effect. *Silen v. Silen,* 44 Wn.2d 884, 271 P.2d 674 (1954).

We cannot determine what the cash value of the policy was at the time of default nor do we hold that it had a cash value at all. The actuarial evidence needed to determine the cash value at the end of 30 months is not before this court.

The order of dismissal is vacated and the case is remanded to the trial court with instructions to admit evidence on the cash value, if any, of the policy at the end of 30 months, using the table shown in paragraph 18. Whether the policy was in effect will be determined by this computation. Costs will abide the final determination.

JAMES, C. J., and SWANSON, J., concur.