[No. 663-3.    Division Three.    November 30, 1973.]

DANIEL R. FINCH, *Appellant*, v. DOUGLAS W. CARLTON *et al.*, *Respondents*.

*Madison R. Jones*, for appellant.

*Herbert H. Freise* and *Albert J. Golden*, for respondents.

GREEN, C.J.—Plaintiff, Daniel R. Finch, appeals from an order granting summary judgment in favor of defendants, Douglas and Barbara Carlton. The appeal comes to this court upon an agreed statement of facts.

Plaintiff's complaint alleges that on March 7, 1970, defendant negligently drove his automobile in such a manner as to collide with plaintiff's automobile in Dayton; that plaintiff sustained serious personal injuries; and that such injuries were the proximate result of defendants' negligence. Defendant denied these allegations and alleged as an affirmative defense that plaintiff had executed a full release of all claims arising from that collision.

Both parties moved for summary judgment, plaintiff seeking to have the release set aside. Plaintiff's affidavit in support of his motion shows that as a result of the collision

plaintiff incurred an automobile repair bill in the amount of $880.21. Before the dealer would release the repaired automobile, this bill was required to be paid in full. Plaintiff was financially unable to pay the bill and sought payment through defendants' insurance carrier. Before the bill would be paid in this manner, plaintiff was requested to sign a release of all claims as follows:

### RELEASE OF ALL CLAIMS

FOR AND IN CONSIDERATION of the delivery of a draft or check to the undersigned in the sum of Eight hundred Eighty and 21/100 ($880.21), receipt of which is hereby acknowledged, each of the undersigned does hereby release and forever *discharge* Douglas W. Carlton, Jr. et al of and *from all claims*, demands, damages, actions or causes of action, whether *on account of damage to property, bodily injuries* or death, resulting or to result from an accident which occurred on or about the 7 day of March, 1970, at or near Front & Main Streets, Dayton, Washington.

It is understood and agreed that this is a FULL AND FINAL RELEASE in full compromise settlement of all claims of every nature and kind whatsoever, and *releases all claims whether known or unknown; suspected or unsuspected.*

Each of the undersigned states that this release has been carefully read by and is signed as the free act and deed of such undersigned.

DATED this 7 day of April, 1970.

WITNESSES TO SIGNATURE:     READ BEFORE SIGNING BELOW
(1) ................................................     x        Dan Finch

(Italics ours.) At that time, plaintiff was unaware that he had any physical injuries and states that he did not contemplate executing a release for "personal injuries or for any other reason other than injury to his automobile." In a signed statement delivered to the insurance adjuster, plaintiff states: "INJURIES    None    ."

The insurance adjuster's affidavit filed on behalf of defendants states that on March 10, 1970, plaintiff discussed the accident with him and signed the statement referred to above which was in plaintiff's own handwriting. The adjus-

ter also states that plaintiff was in his claims office several times, discussing the damage to his car and at no time did he ever mention that he had any personal injuries; that plaintiff told him he had no injuries; that at the time plaintiff signed the release on April 7, 1970, the adjuster was of the opinion that plaintiff fully understood and had read the release; and that based thereon, the $880.21 repair bill was paid on behalf of defendants.

The agreed statement of facts states that the claim form was filled out cooperatively by the plaintiff and the plaintiff claimed no injuries at that time. In June 1970, plaintiff became ill, consulted a number of physicians and incurred medical expenses for treatment of internal injuries which he claims were caused by the accident of March 7, 1970.

The trial court granted summary judgment in defendant's favor, holding that the release was effective and precluded plaintiff's claim for personal injuries arising out of the collision. We believe that *Pepper v. Evanson,* 70 Wn.2d 309, 422 P.2d 817 (1967), controls and requires that the summary judgment be affirmed.

In *Pepper,* the injured party knew of an injury to the "right side of his neck and his right arm" prior to and at the time of executing a release almost identical to the release in the instant case. Thereafter, the injured party discovered injuries to the other shoulder. The granting of summary judgment was affirmed on appeal. After setting forth the general rules applicable to the upsetting of releases for mutual mistake, the court said at page 313:

2. A court of equity will limit a general release to matters contemplated by the parties at the time of its execution, *Bakamus v. Albert,* 1 Wn.2d 241, 95 P.2d 767 (1939); *but* that rule is not controlling when the release refers specifically to the matter being considered by the court, *Schwieger v. Harry W. Robbins & Co.,* 48 Wn.2d 22, 25, 290 P.2d 984 (1955). In this latter case we quoted the following language:

"[I]f the words of a release fairly import a general discharge, their effect may not be limited so as to exclude a demand simply upon proof that at the time of

its execution the releasor had no knowledge of the existence of the demand."

3. A mutual mistake must be one involving both parties, a mistake *independently* made by each party. If the defendant had no independent knowledge and accepted plaintiff's own diagnosis and opinion, the mistake is unilateral. *Beaver v. Estate of Harris,* 67 Wn.2d 621, 409 P.2d 143 (1965).

In the instant case, the defendant had no independent knowledge of any injury by the plaintiff and accepted plaintiff's own diagnosis and opinion that he had no personal injury. Under the reasoning in *Pepper,* mutual mistake does not apply. Further, the release itself imported a general discharge inasmuch as its terms provided that all claims "on account of damage to property, bodily injuries . . . whether known or unknown; suspected or unsuspected" be released. As the court said in *Pepper,* at page 314:

There is nothing in the release from which any inference can be drawn but that the parties intended fully to settle thereby any and all unknown and unforeseen claims arising out of the accident. Indeed, appellant does not argue that the insurance carrier did not intend to include these words in the release.

Plaintiff does not argue before this court that in executing the general release he was a victim of fraud, duress, false representation or overreaching.

We recognize that certain jurisdictions have applied a different rule, as pointed out in the dissent. However, that rule was in effect in most of those jurisdictions at the time *Pepper* and the cases cited therein were decided. Both *Pepper* and the instant case involve injuries coming to light subsequent to the execution of a release of all claims. Thus, we believe the holding in *Pepper* is clearly applicable to the instant case and is presently the law of Washington.

Judgment affirmed.

MUNSON, J., concurs.

McINTURFF, J. (dissenting)—The present case is clearly

distinguishable from the case of *Pepper v. Evanson*, 70 Wn.2d 309, 422 P.2d 817 (1967) cited as controlling by the majority. *Pepper* factually confronts a situation of *known* personal injury, compounded with later-discovered injuries of an independent nature, indicating the subject of personal injuries was discussed and negotiated prior to the execution of the release. The instant case includes neither a known personal injury nor reasonable basis to suspect the existence of an injury at the date the release was given. Further, consideration given for the release was the exact amount of plaintiff's repair bill, raising a question of whether personal injuries were contemplated or considered by the parties to the release.

The trial court granted defendant's motion for a summary judgment based upon the affirmative defense of release. Plaintiff contends that at the time of the execution of the release only the cost of repairs to the automobile was contemplated by the parties; that he did not knowingly release the respondent from liability for unknown injuries; and that therefore there is a genuine issue as to a material fact, *i.e.*, whether the parties intended the release to include personal injuries, which were unknown and unsuspected.

This contention presents the question, does a general release purporting to cover unknown bodily injury, executed without knowledge of any present bodily injury, bar recovery by the releasor for subsequently discovered injuries attributed to the accident for which the release was given, or more fundamentally, is it possible to have such a release set aside without a showing of fraud, duress, false representation or overreaching? Modernly, where a party is unaware of his injuries at the time he executes a general release, under proper circumstances he may be permitted to avoid the release. *Doud v. Minneapolis St. Ry.*, 259 Minn. 341, 107 N.W.2d 521 (1961); *Denton v. Utley*, 350 Mich. 332, 86 N.W.2d 537 (1957); *Clancy v. Pacenti*, 15 Ill. App. 2d 171, 145 N.E.2d 802, 71 A.L.R.2d 77 (1957); *Evans v. S.J. Groves*

& *Son Co.,* 315 F.2d 335 (2d Cir. 1963); 6 A. Corbin, *Contracts,* § 1292, at 181-83 (1962); 13 S. Williston, *Contracts,* § 1551, at 188-205 (3d ed. 1970). This modern remedy could properly be called the "fairly and knowingly made" doctrine. A discussion of this doctrine and its application to the present case is appropriate.

In *Ranta v. Rake,* 91 Idaho 376, 421 P.2d 747 (1967), the court held the majority and more modern view recognizes out-of-court settlements of personal injury claims, but permits a releasor to avoid a release where unknown injuries existed at the time the release was executed. The release is set aside even though the release invariably is broad enough to encompass unforeseen injuries, and although the release was honestly obtained without fraud, overreaching, or undue influence on the part of the releasee. The court stated at page 380:

> Some courts have recognized that cases of this type are to some degree *sui generis* and substantially abandon any attempt to fit these situations within the classic limitations of the law of fraud or mistake and have held that the release may be set aside upon a showing of an inequitable result unless it is established that it was "fairly and knowingly made." Casey v. Proctor, 59 Cal.2d 97, 28 Cal.Rptr. 307, 378 P.2d 579 (1963); Denton v. Utley, 350 Mich. 332, 86 N.W.2d 537 (1957); Clancy v. Pacenti, 15 Ill.App.2d 171, 145 N.E.2d 802, 71 A.L.R.2d 77 (1957); Smith v. Broscheid, 46 Ill.App.2d 117, 196 N.E.2d 380 (1964); Goodman v. Missouri Pacific Railroad Co., 312 S.W.2d 42 (Mo.1958); 6 Corbin on Contracts, § 1292, pp. 181-183 (1962); and 5 Williston, Contracts, § 1551, pp. 4347-4349 (rev. ed. 1937). For an exhaustive coverage of this question see 71 A.L.R.2d 82.

(Italics ours.)

In *Casey v. Proctor,* 59 Cal. 2d 97, 110, 378 P.2d 579, 28 Cal. Rptr. 307 (1963), an affirmative defense of release to an action for personal injuries resulted in a directed verdict for the defendant. This action involved an auto accident in which the plaintiff was the rear-ended party. The monetary damage to the auto was $490.90. Plaintiff had answered

"no" to the question concerning personal injuries (same as in the instant case). The executed release included unknown injuries and the consideration for the release was the amount necessary to repair the car. Two months later he discovered injuries which involved an operation costing $3,000. The California court held that sounder doctrine, and the one adopted by a majority of jurisdictions:

[P]ermit a releaser under proper circumstances to avoid a release, regardless of its terms, where it appears that unknown injuries existed at the time it was executed. (*Doud* v. *Minneapolis Street Ry. Co.*, 259 Minn. 341 [107 N.W.2d 521]; *Ruggles* v. *Selby*, 25 Ill.App.2d 1 [165 N.E.2d 733]; *McGuirk* v. *Ross*, 53 Del. 141 [166 A.2d 429]; *Crane Co.* v. *Newman* (Ind.App.) 37 N.E.2d 732; *Doyle* v. *Teasdale*, 263 Wis. 328 [57 N.W.2d 381]; *Reed* v. *Harvey*, 253 Iowa 10 [110 N.W.2d 442]; *Parker* v. *United Tank Truck Rental, Inc.*, 21 Misc.2d 246 [290 N.Y.S.2d 250]; *Farmers Mutual Automobile Ins. Co.* v. *Buss* (D.Kan. 1960), 188 F.Supp. 895 [Kansas law]; *Graham* v. *Atchison, T. & S.F. Ry. Co.* (9th Cir. 1949) 176 F.2d 819 [F.E.L.A. action]. See Note 71 A.L.R.2d 82, 88; 6 Corbin, Contracts (1962) § 1292, pp. 182-183; 5 Williston, Contracts (rev.ed. 1937) § 1551, pp. 4347-4349. Contra *O'Donnel* v. *Langdon*, 170 Ohio St. 528 [166 N.E.2d 756]; *Kennedy* v. *Bateman*, 217 Ga. 458 [123 S.E.2d 656]; *Wheeler* v. *White Rock Bottling Co. of Oregon, supra,* (Ore.) 366 P.2d 527.)

The recent case of *Mangini* v. *McClurg*, 24 N.Y.2d 556, 249 N.E.2d 386 (1969) discusses and analyzes in detail the legal problems involved in setting aside releases purporting to cover unknown injuries. This case presents a factual situation illustrative of the dangers inherent in application of nonflexible legal principles sustaining the validity of personal injury releases in all instances except fraud, duress, false representation or overreaching. The plaintiff received injuries and thereafter entered into a release. Some half year later plaintiff still complained of a clicking sensation in the left hip. Upon examination it was discovered plaintiff has received injury causing a serious condition which normally would not become apparent for many

months after the injury. The court reversed the granting of summary judgment based upon the release, on the basis that the allegation that the parties did not intend to release unknown injuries presented a question of fact, despite the express language covering unknown injuries contained in the release.

However, a release may not be avoided ipso facto because of later-discovered . injuries. In *Casey v. Proctor, supra* at 112-13, the court stated:

> The essence of the rule is that the wording of the release is not conclusive; it is a question of fact whether the parties to a release actually intended to discharge such liability. . . . Whether a release bars an action for later discovered personal injuries is a question of fact and depends upon whether it was "knowingly" made. . . . Whether there is substantial evidence that it was not will depend upon the amount of consideration received compared with the risk of the existence of unknown injuries [citing cases] the presence of bargaining and negotiation leading to the settlement [citing cases] whether the subject of personal injuries was discussed [citing cases] and the reasonableness of the contention that the injuries were in fact unknown at the time the release was executed [citing cases].

The courts, when deciding whether a release for unknown injuries was fairly and knowingly made, should be guided by the following factors: (1) the peculiar dignity and protection to which the law cloaks the human person, as contrasted with articles of commerce; (2) the inequality of the bargaining positions and relative intelligence of the contracting parties; (3) the amount of consideration received; (4) the likelihood of inadequate knowledge concerning future consequences of present injury to the human body and brain; and (5) the haste, or lack thereof, with which release was obtained. *See Clancy v. Pacenti, supra.*[1]

[1]It is stated in *Clancy*, at page 176: "We have not taken into account cases other than those involving personal injuries because personal injury cases in this respect are *sui generis*. Ricketts v. Pennsylvania R. Co., 153 F.2d 757, p. 767. However, no rationale has been formulated for the special treatment of such cases. *It appears to rest on the peculiar*

There are conflicting policies involved—one to encourage out-of-court settlements and the other to relieve a releasor from a contract involving unknown personal injuries, which is not fairly and knowingly made. When there is fairness and knowledge on the part of the parties the law should extend its protection to the stability of the transaction by holding the parties to the express terms of the release. However, unless the releasor can break the literal terms of the release, *where he has no knowledge of or reason to suspect the existence of personal injuries,* he is left to suffer the consequences of personal injury without compensation, while the releasee who is usually an insurer, has received a windfall in avoiding, by technical means, a liability for a risk it has been paid to assume. *Cf. Denton v. Utley, supra.*

Based upon that status of the record I find there exists a genuine issue of a material fact, *i.e.,* whether the release for personal injuries was knowingly made. Therefore I feel the summary judgment should be reversed and the case remanded for trial.

---

*character of personal injuries.* In such cases it is not an article of commerce that is involved, but the human mind and body, still the most complicated and mysterious of all the things that are upon or inhabit the earth. Here, mistakes are easily made and the consequences are more serious than in any other of the affairs of man. A slight abrasion may mean nothing or it may lead to a malignancy. Insignificant pain may mean the beginning of a fatal coronary attack or only a slight intestinal disturbance. Yet, man cannot and does not live in dread of these possibilities. He accepts assurances that all will be well, even though ultimate consequences cannot be appraised as in matters involving property or services." (Italics ours.)

Petition for rehearing denied January 11, 1974.

Review granted by Supreme Court February 20, 1974.